UNITED STATES of America,
Plaintiff-Appellee,

v.

Benarsi Das MEHRA; Far Eastern Merchants, Inc., Defendants-Appellants.

No. 86–5105.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 3, 1987.

Decided July 24, 1987.

Judd Burstein (Robert F. Katzberg, Kaplan & Katzberg, New York City, Michael L. Lee, on brief) for defendants-appellants.

David Bernard Smith, U.S. Atty. (Kenneth W. McAllister, U.S. Atty., Greensboro, N.C., Becky M. Strickland, Paralegal Specialist on brief) for plaintiff-appellee.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Benarsi Das Mehra and Far Eastern Merchants, Inc. (collectively Mehra) appeal a judgment convicting them of conspiring to import hashish, in violation of 21 U.S.C. § 963, importation of hashish, in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2, and interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3). Mehra

claims that the district court erred in upholding the validity of two searches and seizures of hashish, occurring in 1983 and 1986, and in the admission of a prior consistent statement of a government witness.

## I

Mehra and his textile company, Far Eastern Merchants, Inc., imported hand woven Indian cottons into this country from India. Unfinished bales of fabric arrived from India at Far Eastern's warehouse in High Point, North Carolina, and were then sent either to a fabric finishing company for processing or directly to a customer. The finishing company unrolled the bales, processed and backed the fabric, and delivered the finished fabric to purchasers designated by Far Eastern.

The fabric involved in the 1983 search consisted of 100 rolls of cotton that Mehra imported from India and then sold to Eastern Handwoven. Synthetic Finishing picked it up from Far Eastern at High Point to process the material and deliver it to Eastern Handwoven.

On October 7, 1983, employees of Synthetic Finishing were processing the last of 33 rolls of this fabric in the lapper, a device for unrolling the material, when the roll became hung in the machine, causing it to stop. The employees discovered that the cloth had been cut to form a window, and nine packages wrapped in wax paper were inside tied to the remainder of the roll. An employee reported to the State Bureau of Investigation that they had found what they thought to be drugs while processing material at the plant and requested that an agent come to the plant.

Synthetic gave the cut roll of fabric and the packages to the SBI agent, who opened one of the packets at his office later the same day. Under the brown waxed paper were several layers of a thin blue cellophane-like material, two to three layers of a thicker white plastic milky colored material, and approximately two layers of a thin, clear sheet plastic material. Inside the wrappings was a dark, hard, compressed, vegetable type material, which was determined to be hashish. The nine packages contained approximately 20 pounds of hashish.

The district court denied Mehra's motion to suppress the warrantless search and seizure of the hashish. It held that Mehra and Far Eastern had no legitimate expectation of privacy in the packages of the drug and alternatively that Synthetic Finishing had sufficient authority to consent to the search and seizure. Mehra assigned error contending that he and his company had neither abandoned the drugs nor authorized Synthetic Finishing to consent.

## II

The fourth amendment protects people rather than places, *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967), but the capacity of a person to claim the protection of the fourth amendment depends upon a legitimate expectation of privacy in the invaded place or thing. This requires both that a person have exhibited an actual expectation of privacy and that the expectation be one that society recognizes as reasonable. *Katz v. United States*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring). In assessing what is a constitutionally protected reasonable expectation of privacy, the Supreme Court has considered such factors as the intention of the framers, the uses to which the person has put a location, and societal values and understandings about areas which deserve the fourth amendment's protection. *See Oliver v. United States*, 466 U.S. 170, 178, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984).

The Supreme Court has upheld as legitimate not only the privacy rights of persons in places historically associated with the fourth amendment, such as the home, but also the privacy rights of persons in letters, sealed packages, and in closed, opaque containers, such as footlockers, suitcases, or packages whose contents are not inferable from their appearance. *See Robbins v. California*, 453 U.S. 420, 426–27, 101 S.Ct. 2841, 2845–46, 69 L.Ed.2d 744 (1981). Thus, in *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410

(1980), on which Mehra relies, the Supreme Court upheld the privacy right of an owner of pornographic films who shipped them by private carrier. The films were labelled, then wrapped and sealed. The packages were erroneously delivered to a recipient who called the Federal Bureau of Investigation, and agents later projected the films without obtaining a warrant. The Court extended to this shipment the same fourth amendment rights afforded letters and sealed packages sent by mail and the same expectation of privacy granted to an ordinary locked suitcase. 447 U.S. at 654–55, n. 5, 100 S.Ct. at 2400–01, n. 5. The Court measured the consignor's expectation of privacy in the contents of a carton delivered by private carrier by the condition of the package when shipped, unless there was reason to assume the carton would be opened before reaching its destination. 447 U.S. at 658–59, n. 12, 100 S.Ct. at 2402–03, n. 12. Though the agents lawfully obtained the film, projection constituted an unlawful search. 447 U.S. at 654, 100 S.Ct at 2400. In *Walter* and the other container cases in which the Court found a violation of the fourth amendment, the accused retained a legitimate expectation of privacy.

The critical issue in this case therefore is not simply whether the hashish was screened from detection by the opaque wrapping of the packets. It is whether Mehra and his company had a reasonable expectation of privacy in the packets.

■ This case presents no circumstances which justify a reasonable expectation of privacy. Without this expectation, there is no unconstitutional search. *See United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Mehra's claim presents neither an actual nor a legitimate expectation of privacy. Unlike the films in *Walter*, Mehra's packets of hashish do not support the expectation of privacy that protects objects transported by mail or private carrier. For, unlike objects wrapped, packaged, and sent in a normal manner, the packets were placed and sent in a roll of cotton, a container that denies both the reasonable and actual expectation that it or anything within it could remain private. The nature and function of a roll of fabric is to be unrolled; its contents will inevitably be exposed. Such circumstances belie a reasonable expectation of privacy. The risky nature of his transaction does not support a reasonable inference that Mehra took normal precautions to maintain his privacy, and given the means he chose to import drugs, he could have had no reasonable subjective expectation that the roll and packets would remain free from governmental intrusion. *Cf. Rawlings v. Kentucky*, 448 U.S. 98, 103–06, 100 S.Ct. 2556, 2560–62, 65 L.Ed.2d 633 (1980) (one who put drugs in another's purse had no expectation of privacy).

Furthermore, the packets contained neither names nor addresses. In this respect they differed from packages sent by mail or private carrier, which identify the possessory interest of the consignee. Mehra did not identify, or cause anyone else to identify, the possessory interest he now claims. Not until three years later—and then only through recorded conversations with an employee—was Mehra's interest in the drugs established. One cannot reasonably expect privacy in anonymous packets concealed in imported fabric. The SBI agent's examination of the contents of the packets did not infringe any cognizable interest of Mehra or his company.

■ Inasmuch as we conclude that Mehra had no legitimate expectation of privacy in the roll of fabric, the packets, or the contents of the packets, we find it unnecessary to discuss the district court's alternative ground, which is based on Synthetic Fabric's consent, to the SBI agent's examination of the packets. It is sufficient to note that Synthetic Finishing did not infringe Mehra's constitutional rights by discovering the packets and delivering them to the agent. The fourth amendment does not proscribe private action undertaken without participation or knowledge of a government official. *See United States v. Jacobsen*, 466 U.S. at 113, 104 S.Ct. at 1656; *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921).

### III

In 1986 government agents, alerted by one of Mehra's employees, seized a large quantity of drugs concealed in rolls of fabric that Mehra had imported. Mehra contends that this search was illegal because the warrant authorizing it was based in part on the 1983 search. In view of our conclusion that the 1983 search was proper, the 1986 search was also valid.

### IV

Mehra's evidentiary assignment of error merits little discussion. Mehra's employee, a government witness, testified about his suspicions that the imported fabrics contained drugs. Over Mehra's objection the government agent testified that the employee had related his suspicions to the agent before Mehra was apprehended. The court admitted the testimony of the agent to corroborate the employee's statement. *See* Fed.R.Evid. 801(d)(1)(B). Mehra contends that admission of prior consistent statements was error because it was made after the employee had reason to fabricate in order to protect himself from arrest and deportation.

The employee's suspicions were fully corroborated by discovery of the 1986 shipment of drugs and Mehra's incriminating recorded conversations. The prior consistent statement added nothing of significance to the government's case. Admission of the statement, even if erroneous, presents no ground for reversal. *See* Fed.R.Crim.P. 52(a).

*AFFIRMED.*