Salem

THOMAS R. MORKE

v.

COMMONWEALTH OF VIRGINIA

Nos. 1898-90-3, 1899-90-3
1996-90-3, 1997-90-3 and 1998-90-3

Decided May 26, 1992

COUNSEL

William M. Copper, for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—On appeal, Thomas Morke contends: (1) that the search warrant issued for his residence failed to meet the particularity requirements of the Fourth Amendment and Code § 19.2-54 in describing the items to be seized and that the evidence seized based on the warrant should have been suppressed; (2) that the officers exceeded the authority conferred by the warrant in seizing items not named in the warrant, thereby invalidating their seizure even of items otherwise lawfully seized; (3) that his Fourth Amendment rights were violated because the search warrant for his residence was based, in part, on information obtained through the use of a phone-trap device; and (4) that the evidence seized from his home, his vehicle, and his confession should have been suppressed as tainted fruit of the illegal search.[1] We hold that the search warrant was not a general warrant because it identified the items to be seized with sufficient particularity. We also hold that the seizure of items not named in the warrant, even if those items were unlawfully seized, did not invalidate the entire search. We further hold that because the phone trap was installed by a private citizen, and not by a government agent, the Fourth Amendment was not implicated. Thus, we affirm Morke's convictions. Because we uphold the validity of the search warrant, we necessarily reject Morke's contention that the evidence obtained as a result of the search was tainted.

In late 1989 and early 1990, the Rockbridge County Sheriff's Department was investigating a spate of residential burglaries in the county. On January 26, 1990, Lieutenant Reynolds, who was in charge of the investigation, sought a search warrant for the residence occupied by Thomas R. Morke, based, in part, on information provided by Wayne Moody and Steve Shires. Reynolds submitted the following affidavit:

---

[1] The appellant was convicted of breaking and entering and larceny in each of five separate trials. The appeals were not consolidated but were argued jointly and are addressed in one opinion since each appeal involved identical issues.

On 1-26-90 Wayne Moody of Rt. 2, Lexington, Va. went to Joan Biggs residence and found Thomas Morke inside this residence. Ms. Biggs was away on a sking [sic] trip. Mr. Moody is responsable [sic] for the residence and to check on it. Mr. Morke left the residence approx. 15 minutes later. Detective Deputy Hickman attempted to stop Mr. Morke. A chase isued [sic] and Mr. Morke escaped. On 1-3-90 Sgt Webb responded to an alarm at Mr. Robinson's and Mr. Shaw's residence. Upon his arrival Mr. Morke's gray Escort was setting [sic] in the driveway of this residence. The motor was warm but he could not find Mr. Morke.

On 12-27-90 Mr. Thomas Morke called Steve Shires home at approx. 7:54 a.m. as a Telephone trace was installed in Mr. Shires home. Non [sic] one was home and Mr. Shires home was broken into.

Mr. Moody knows Mr Morke because he [Morke] identified himself to Mr. Moody and told him how to get in contact with him. Mr. Morke has been convicted of several breakins in the past involving jewery thiefs [sic] from residential homes as his pattern of operation. Dane County, Wisconsin charged Mr. Morke with six counts of Break ins he later confessed to over 150 Breakins. The residence of Joan Biggs was forced in by going into a window with a hatchet that was left there. There were two jewrly [sic] boxes on the bed and the room look ramsacked [sic]. In the State of Wisconsin where Mr. Morke resided, a search of his residence was conducted by the authorities there. And approximately $300,000.00 worth of stolen jewelry was found.

The affidavit's mention of a "telephone trace" refers to a device also known as a "phone trap" which Steve Shires, a Virginia game warden, had the telephone company place on his private phone. The phone trap records the telephone number from which calls were placed to the Shires's residence. The device showed that a call was placed to the Shires's residence from a telephone at Morke's residence on the day when Shires's home was burglarized.

Based on the affidavit, the magistrate issued a search warrant for Thomas Morke's residence. In the search of Morke's residence, the officers seized sixty-five items, none of which were the specifically described items or jewelry belonging to Steve Shires.

During the next three weeks, five additional search warrants were issued to search Morke's home or automobile. Several items were seized during these searches. At a pre-arranged meeting between Morke, his attorney, and the police, Morke waived his *Miranda* rights and confessed to a number of burglaries. Morke was indicted on five counts of statutory burglary in violation of Code § 18.2-91 and five counts of grand larceny in violation of Code § 18.2-95. In five separate jury trials, he was convicted on all charges, for which he was sentenced to a total of ninety-seven and one-half years in the penitentiary.

## I.

General warrants are proscribed by both the Fourth Amendment, *Andresen v. Maryland*, 427 U.S. 463, 480 (1976), and Code § 19.2-54. The purpose of this proscription is to limit the discretion that police officers may exercise when executing a search warrant and to preclude them from engaging in a "fishing expedition" or an "exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). To protect against this danger, the Fourth Amendment requires " 'a particular description' of the things to be seized." *Id.* The requirements of the Virginia statutes controlling the issuance of search warrants have been interpreted to impose the same search warrant requirements as the Fourth Amendment. *Kirby v. Commonwealth*, 209 Va. 806, 808, 167 S.E.2d 411, 412 (1969).

The test for determining the requisite degree of particularity exacted by the Fourth Amendment "is a pragmatic one: 'The degree of specificity required . . . may necessarily vary according to the circumstances and type of items involved . . . . [T]here is a practical margin of flexibility permitted . . . in the description of items to be seized.' " *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979), *cert. denied*, 446 U.S. 957 (1980) (citation omitted). Consequently, the Fourth Amendment requires neither that a search warrant "be elaborately detailed," *United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984), nor that authorities "minutely identify every item for which they are searching," *United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir. 1984) (citation omitted). So long as the "search warrant describe[s] the objects of the search with reasonable specificity," it complies with the dictates of the Fourth Amendment. *Reed*, 726 F.2d at 342. The determination whether the warrant possesses the

requisite degree of specificity necessarily requires a fact-specific, case-specific analysis. However, search warrants that limit the executing officers' discretion by directing them to seize only evidence of a specific crime consistently have been held to satisfy the particularity requirement of the Fourth Amendment. *See Andresen*, 427 U.S. at 479-82 (upholding a warrant that authorized seizure of specified property "together with other fruits, instrumentalities and evidence of crime at this [time] unknown" because the description authorized seizure of items related to a specified offense); *United States v. Fawole*, 785 F.2d 1141, 1144 (4th Cir. 1986) (holding that a warrant that authorized seizure of "address books, diaries, business records, documents, receipts, warranty books, guns, stereo equipment, [and] color television which are, evidence of Violation of Georgia State Statute 16-8-2 Theft by Taking" satisfied Fourth Amendment because it authorized seizure of evidence related to a particular crime); *United States v. Ladd*, 704 F.2d 134, 136 (4th Cir. 1983) (holding that items were sufficiently identified where warrant specified those relating to "the smuggling, packaging, distribution and use of controlled substances"); *see also United States v. Blum*, 753 F.2d 999, 1001 (11th Cir. 1985) (upholding the validity of a warrant that specifically identified items followed by the description, "miscellaneous merchandise fraudulently obtained from vendors throughout the United States which are items fraudulently obtained in violation of Title 18, U.S. Code, Sections 1341, 1343 and 2314").

The first search warrant for Morke's residence directed the officers to search for the following:

Jewelry assorted to include gold necklaces, a gold Lexington High School ring, with initials AMB inside ring, a brass box 2" tall and 5" diameter, an oval medalion [sic] with a trout on it and general other pieces of assorted jewelry. Property [of] Steve Shires together with other property stolen during recent break-ins reported to Rockbridge County Sheriff's Office.

The search warrant further identified the offenses to which the warrant related as being "break and enter and grand larceny in violation of Code §§ 18.2-91 and 18.2-95." Thus, the search warrant identified the items for which the officers were authorized to search with varying degrees of particularity and also specified in

several ways the particular offenses to which the items relate. Certain items of jewelry were described by giving detailed characteristics as to nature, appearance, dimensions, and initialing. The specific description of items was followed by a general directive to seize "other pieces of assorted jewelry" identified by naming a specific victim and other unidentified victims of recent offenses. We hold that, because the warrant constrained the executing officers' discretion by directing them to search for specific items and evidence related to particular offenses, the search warrant for Morke's residence was not a general warrant prohibited by the Fourth Amendment and Code § 19.2-54.

## II.

■ Next, Morke contends that the evidence seized in the first search should have been suppressed by the trial court because the officers exceeded the scope of the search warrant. We reject this contention. The officers who conducted the search of Morke's residence seized only the items included within the warrant which were further identified as having been reported stolen by the supervising officer on the search, Lieutenant Reynolds, who had investigated the "recent break-ins" in the Rockbridge County area. While the officers did, in fact, seize some items that were never thereafter identified as being stolen property, this fact does not require the suppression of property that was properly seized under the authority of the warrant. A search is not invalid simply because officers seize items not named in the warrant. *See Coolidge v. New Hampshire*, 403 U.S. 443 (1971). Moreover, the seizure of the articles outside the scope of a search warrant does not require suppression of the articles validly seized in the search pursuant to the search warrant. *See United States v. Borromeo*, 954 F.2d 245 (4th Cir. 1992); 2 Wayne R. LaFave, *Search and Seizure* § 4.11(a), at 335 (2d ed. 1987). Consequently, the trial court correctly admitted into evidence the items within the scope of the search warrant which were seized from Morke's residence.

## III.

Morke also contends that his Fourth Amendment rights were violated by the use of a phone-trap device to obtain the evidence that a phone call was placed from the phone at his residence for which he had a private unpublished number. He contends that this illegally seized evidence was then used as an essential part of

the affidavit to connect him with Steve Shires in order to obtain the search warrant for Morke's residence. We hold that because no state action was involved in obtaining this information, the Fourth Amendment is inapplicable. Consequently, Morke's argument is without merit.

■ The constraints of the Fourth Amendment apply only to government or state action; they do not apply to searches or seizures undertaken by private individuals. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Mehra*, 824 F.2d 297, 299 (4th Cir.), *cert. denied*, 484 U.S. 915 (1987). Moreover, even when an individual is a government agent or employee, the Fourth Amendment applies only when the search or seizure is within the scope of the individual's function or capacity as an agent or employee of the state. *United States v. Smith*, 810 F.2d 996, 998 (10th Cir. 1987), *cert. denied*, 488 U.S. 888 (1988); *State v. Smith*, 763 P.2d 632, 637-38 (Kan. 1988).

Steve Shires, a game warden in Rockbridge County, had Centel Telephone Company (Centel) install a phone-tracing device at his residence to record the telephone number from which incoming telephone calls were placed. While he was away from home, his residence was broken into and several items were stolen. When Shires returned and learned of the burglary, he obtained from Centel a printout listing the telephone number from which all incoming phone calls had been placed while he was away from home, the names of the individuals to whom those phone numbers were registered, and the time and date on which they were made. The printout showed that a phone call had been placed to Shires's residence from the unlisted telephone number of Thomas R. Morke on December 27, 1989, at approximately 7:54 a.m. Shires turned the printout over to the Rockbridge Sheriff's Department. The information regarding the phone call from Morke's telephone to Shires's residence was included in the affidavit in support of the first search warrant for Morke's residence.

Steve Shires was acting in his private capacity when he had the phone-tracing device installed, and when he obtained the printout from Centel. Although Shires is a Virginia game warden employed by the State and, in that sense is a government agent, he was not acting within the scope of his employment when he had the phone-tracing device installed, when he procured the printout, or when he delivered it to the police. Also, Centel was acting in a

private capacity when its employees installed the tracing device on Shires's telephone and when it compiled the printout which revealed that a phone call had been placed to Shires's home from Morke's unlisted telephone number. Thus, no state action was involved in obtaining Morke's unlisted telephone number which linked him to the burglary of Shires's residence. Since no state action was involved, the Fourth Amendment does not apply, and Morke's contention is without merit.[2]

Finally, Morke asserts that evidence obtained from his home and vehicle, as well as his confession, should have been suppressed because it was tainted by the illegality of the initial search. Because we hold that the initial search was valid, we necessarily reject Morke's argument.

Accordingly, we affirm Morke's convictions.

*Affirmed.*

Baker, J., and Willis, J., concurred.

---

[2] We note that the Supreme Court has rejected claims that an individual has a reasonable expectation of privacy in the numbers dialed on his telephone. *See Smith v. Maryland*, 442 U.S. 735 (1979).