14 F.3d 597
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Carl DOUGLAS, Defendant-Appellant.
 No. 92-5662.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 27, 1993.
Decided Jan. 12, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Norwood Carlton Tilley, Jr., District Judge. (CR-92-33-G)
 Walter C. Holton, Jr., Holton & Menefee, Winston-Salem, NC, for apellant.
 Benjamin H. White, Jr., U.S. Atty., Lisa B. Boggs, Asst. U.S. Atty., Greensboro, NC, for appellee.
 M.D.N.C.
 AFFIRMED.
 Before HALL and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Robert Carl Douglas appeals his conviction and sentence for possession with intent to distribute cocaine base (crack), in violation of 21 U.S.C. Sec. 841(a)(1) (West 1981). Finding no merit to either contention raised in this appeal, we affirm.
 
 I.
 
 2
 In early 1992, a confidential informant told Detective Julius Fulmore of the Greensboro Police Department that a man named "Bob" headed a group that distributed large quantities of cocaine in Greensboro. The informant, who on four other occasions had furnished information to Fulmore that had resulted in arrests and convictions, pointed out Bob's car (a Cadillac) and apartment to Fulmore.
 
 
 3
 The car was registered to Robert Carl Douglas at the address of the apartment. Fulmore began surveillance of the car and the general area of the apartment. He recognized Douglas as an individual whom Fulmore had seen wiring $6000 to Cynthia Miles in September 1991. Douglas had used an alias when he sent this money. Further investigation revealed that Douglas had wired significant amounts of money to Miles between September 1991 and February 1992.
 
 
 4
 The informant told Fulmore that a heavy-set black female named Jackie transported the cocaine to Greensboro. Jackie took a bus to Danville, Virginia, where Bob ordinarily met her. The two then drove to Greensboro.
 
 
 5
 On February 13, 1992, the informant called Fulmore to tell him that Bob's supply of crack was gone and that Jackie was bringing a new shipment to Danville later that day. Fulmore immediately called the Danville police and told them of the anticipated shipment. He advised them to look for a heavy-set black female getting off a bus. Danville police set up surveillance at the bus station. When a woman fitting Jackie's description left a bus, she was met by a man driving a Cadillac that was registered to Douglas.
 
 
 6
 Danville police relayed this information to Fulmore, who told them that Douglas was the target of the investigation. Authorities followed the car into Greensboro, where it was stopped. Fulmore approached the driver's side of the vehicle, asked for the driver's license and registration, and told the driver that he was conducting a narcotics investigation.
 
 
 7
 Other detectives began talking to Douglas, and Fulmore went to the passenger side of the car. He opened the door so that he could talk to the passenger. As he opened the door, a McDonald's paper bag fell to the ground. Fulmore looked inside the bag and discovered crack cocaine. Both Douglas and his passenger, Jackie Williams, were arrested. A further search of the car yielded more crack.
 
 
 8
 Douglas moved to suppress the crack seized during this search. The district court denied the motion. On appeal, Douglas claims that the denial of the suppression motion was error. We review de novo the legal conclusions involved in a suppression determination. Factual determinations informing those conclusions are reviewed under the clearly erroneous standard. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S.1992).
 
 
 9
 Because a routine traffic stop is in the nature of an investigative detention, rather than a custodial arrest, courts use the analysis of Terry v. Ohio, 392 U.S. 1 (1968), to determine whether such a stop violates the Fourth Amendment. United States v. Rusher, 966 F.2d at 875. Under Terry, a police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, based on articulable facts, that criminal activity is afoot. Terry v. Ohio, 392 U.S. at 30; see United States v. Crittendon, 883 F.2d 326, 328 (4th Cir.1989).
 
 
 10
 An informant's tip may provide the reasonable suspicion needed for a traffic stop if the police test the reliability of the information either by corroborating the details of the tip or by establishing the informant's trustworthiness. Alabama v. White, 496 U.S. 325, 328-30 (1990). In this case, there is no question that the informant's tip justified the stop. First, the same informant had, in four instances, provided Fulmore information that had led to arrests and convictions. Second, the informant's statements concerning Bob's activities had been corroborated by officers' observations of Douglas prior to and on February 13.
 
 
 11
 Having properly stopped the vehicle, the officers had the right to ask both Douglas and his passenger, who were suspects, to exit the vehicle. See Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). When Fulmore opened the passenger door to speak to Williams, a bag apparently containing trash fell to the ground. Nothing about the bag, which fell from the passenger side of the vehicle, indicated that Douglas had a legitimate expectation of privacy in its contents. Cf. United States v. Mehra, 824 F.2d 297, 298-99 (4th Cir.), cert. denied, 484 U.S. 915 (1987). We accordingly find that Fulmore acted within the constraints of the Fourth Amendment when he looked inside the bag and discovered that it contained crack, and the district court correctly denied the suppression motion.
 
 II.
 
 12
 Douglas contends that he should have been held responsible only for the amount of crack (244 grams) seized during the traffic stop. Based on trial testimony as to the extent of Douglas' crack sales, the district court attributed an additional 1568 grams to Douglas. This resulted in a base offense level of 38. See United States Sentencing Commission, Sentencing Guidelines, Secs. 2D1.1(a)(3), (c)(3) (Nov.1991). We find Douglas' argument to be without merit.
 
 
 13
 If the parties differ regarding the amount of drugs involved, the government has the burden of showing the amount by a preponderance of evidence. United States v. Powell, 886 F.2d 81, 85 (4th Cir.1989), cert. denied, 493 U.S. 1084 (1990). The district court's factual findings as to the amount of drugs involved in an offense are reviewed for clear error. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990). The district court may estimate the total quantity of drugs when the amount seized does not reflect the true scale of the offense. See U.S.S.G. Sec. 2D1.1, comment. (n.12); U.S.S.G. Sec. 2D1.4, comment. (n.2). In this context, the findings of the district court as to the credibility of witnesses are entitled to "due regard." United States v. Sheffer, 896 F.2d 842, 844 (4th Cir.), cert. denied, 498 U.S. 968 (1990). It is undisputed that 244 grams of cocaine base were seized on February 13. Further, Gail Crawford testified that she received two grams of crack from Douglas each day during a four-week period between October 1991 and January 1992. Converting grams to ounces, and adding the amount testified to by Crawford to that actually seized yields 1812 grams. We hold that the court did not clearly err in calculating the total quantity of crack.
 
 
 14
 The court properly treated as relevant conduct the amount seized and the amount to which Crawford testified. Under the guidelines, actions which are part of the same "course of conduct" or a "common scheme or plan" may be considered at sentencing even if those actions were not included in the indictment or conviction. U.S.S.G. Sec. 1B1.3(a)(2) (Nov.1991); United States v. McNatt, 931 F.2d 251, 258 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3478 (U.S.1992); United States v. Williams, 880 F.2d 804, 805-06 (4th Cir.1989).
 
 
 15
 In determining whether conduct is relevant for Sec. 1B1.3(a)(2) purposes, the court looks to the nature of the defendant's acts, his role, and the number and frequency of those acts, as well as the similarity, regularity, and temporal proximity between the offense of conviction and the uncharged conduct. United States v. Mullins, 971 F.2d 1138, 1144 (4th Cir.1992). Here, the facts support a finding that Douglas' sales to Crawford constitute relevant conduct under the guidelines. We note particularly that Crawford testified about Douglas' distribution of crack and that this distribution occurred near the time of Douglas' February 13 arrest.
 
 III.
 
 16
 Finding no merit to either of the arguments raised on appeal, we affirm both the conviction and sentence. As our review of the materials before us reveals that it would not significantly aid the decisional process, we dispense with oral argument.
 
 
 17
 AFFIRMED.