COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Elder and Humphreys
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.   Record No. 2123-02-4            JUDGE ROBERT J. HUMPHREYS
                                        FEBRUARY 5, 2003
DOUGLAS EDWARD MAREK


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Rossie D. Alston, Jr., Judge

Steven A. Witmer, Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on
brief), for appellant.

C. Shawn Allen (William A. Boge, on brief),
for appellee.


The Commonwealth of Virginia appeals a decision of the trial

court granting Douglas Edward Marek's motion to suppress evidence

pertaining to his indictment for unlawful possession of oxycodone

(marketed under the trade name of Oxycontin), in violation of Code

§ 18.2-250, possession of cocaine, in violation of Code

§ 18.2-250, and simultaneous possession of a firearm and a

controlled substance, in violation of Code § 18.2-308.4. The

Commonwealth contends the trial court erred in finding that police

violated Marek's Fourth Amendment rights by unlawfully extending

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication. Further, because this opinion has
no precedential value, we recite only those facts essential to
our holding.

their search of Marek's residence beyond the scope of the search warrant. For the reasons that follow, we reverse the decision of the trial court.

I.

On the evening of December 7, 2001, Officer Howard Michael Perry, of the City of Manassas Park police department, was dispatched to the area of "Manassas Drive and Evans" to investigate a report of "shots fired." Perry and his fellow officers immediately reported to the area and observed two individuals walking together on Evans Street. Officer Perry approached the couple and asked if they had any information about the shooting. The couple advised Perry that they had seen "a white male in the rear and side yard of 116 Manassas Drive" "discharging his firearm into the ground."

The officers then "converged on 116 Manassas Drive," and "took up positions around the residence." At first, the officers attempted to have dispatch contact the residents by telephone "to have them come outside." However, no one inside the home answered the telephone. Upon continuing to observe the house, the officers saw that a light was on in one of the upstairs bedrooms and could see that a television was on in one of the downstairs rooms. In addition, one of the officers saw a fully dressed white male looking out an upstairs window.

At that point, Officer Perry approached the front door and knocked. A few moments later, a white male answered the door,

-

wearing only his underwear.  The man identified himself as "Douglas Marek."  Officer Perry advised Marek why they were there and asked Marek if he had "discharged a firearm in his backyard."  Marek stated that he had not.  Marek's girlfriend then approached the door and Officer Perry again advised why the officers were there.  Marek's girlfriend told Officer Perry that "there were no guns in the residence at all."  At that time, Officer Perry asked for consent to search the residence, but Marek refused, told Perry he had nothing further to say, and closed the door.

As the officers began to leave the residence, Officer Perry observed a shell casing on the ground near the driveway.  Perry picked it up and saw that it was a .380 caliber shell casing.[1]  Perry then knocked on Marek's door once again.  However, Marek refused to answer the door.  Marek told the officers, through the closed door, that he had nothing to say and that he was going to bed.

While other officers stayed at the residence to "preserve the scene," Officer Perry went to the magistrate and obtained an arrest warrant for Marek for "discharging a firearm within the city limits."  He also obtained a search warrant to search Marek's home for "a .380 caliber handgun."

---

[1] Officer Perry subsequently found two additional .380 shell casings, located on the ground within two feet from where he found the first one.

-

When Officer Perry returned to the residence, he again knocked on the front door.  Marek answered, and Perry advised him that he had a search warrant authorizing a search of the "residence for the firearm and a warrant for [Marek's] arrest." Marek let the officers inside, "without incident," and Officer Perry asked him "where the gun was at."  Marek told Perry that the gun was "upstairs at the top of the stairs on the landing."  Marek then "opened the door of the staircase and pointed to a blue box at the top of the stairs."

At that point, Officer Perry and his partner went upstairs and found the .380 firearm where Marek had advised that it would be.  "Once [they] were at the top of the stairs and [they] had the gun in possession," Officer Perry's partner noticed a box of .380 ammunition on a gun shelf, holding "numerous rifles."  The officers then walked to the gun shelf and seized the ammunition. As they were standing at the shelf, Officer Perry observed "what appeared to be a glass smoking device or pipe on an entertainment center," as well as several bottles of Oxycontin, in a nearby bedroom.  The pipe appeared to have "burnt residue around both ends of it."  Based upon his experience as a police officer, Perry believed the item to be a "crack pipe."

Officer Perry then retrieved the pipe and left the residence to obtain an additional search warrant "for the narcotics paraphernalia."  After executing the second search warrant, officers obtained approximately 30 empty bottles of Oxycontin and

-

several full bottles of Oxycontin.  Marek, who had already been arrested on the charge of "discharging a firearm within the city limits" was then charged with the remaining counts at issue on this appeal.[2]  Marek subsequently made incriminating statements to police regarding these offenses.

Prior to trial, Marek filed a motion to suppress the evidence against him contending, in part, that the officers "exceeded the scope of the first search warrant," by continuing their search after they had obtained the .380 caliber handgun, which was the sole subject of the first search warrant.  After hearing argument on the motion, the trial court issued a written letter opinion excluding "evidence derived from the officers' search beyond the scope of the first warrant," finding:

> There is little question that if the officer
> was lawfully in a position to view the drug
> paraphernalia, the items perceived would
> qualify as contraband.  Therefore the
> inquiry must focus on whether the officer
> was lawfully in position to view these
> items.
>
> *       *       *       *       *       *       *

---

[2]  The record on appeal reveals that, in circuit court, Marek was subject to only three charges.  Specifically, unlawful possession of a controlled substance, simultaneous possession of a firearm and a controlled substance and possession of cocaine. However, the record demonstrates that, initially, Marek was also subject to additional firearm and drug charges, including the charge for discharging a firearm within the city limits of Manassas.  The record is silent as to the disposition of the additional charges and because the disposition is not pertinent to this appeal, we do not consider them further.

. . . The officers in this instance had discovered the subject of their search warrant. That first warrant was limited to a search for "a .380 caliber handgun." The warrant did not authorize a search for additional guns or ammunition. While the gun rack may have been in plain view of the officers from their lawful position at the top of the stairs, the drug paraphernalia that formed the basis of the second warrant was not.

\*       \*       \*       \*       \*       \*       \*

. . . To ensure that generalized searches do not ensue, searches must be limited to the scope specifically identified in the warrant. Since the warrant here specifically limited the search to "a .380 caliber handgun," the subsequent search for ammunition was invalid. As a result, the officer was not lawfully in the position from which he viewed the crack pipe and other drug paraphernalia. Those items are derived from an illegal search and will be excluded from evidence presented at trial

## II.

On appeal, the Commonwealth contends the trial court erred in excluding the evidence. Specifically, the Commonwealth argues that the officers were not required to terminate the execution of the first warrant "simply because they discovered a single .380 handgun," but were entitled, pursuant to the search warrant, to search the home in order to find any additional .380 caliber handguns which might have been used in the commission of the crime.[3] In the alternative, the Commonwealth contends the

---

[3] The validity of the warrant is not at issue in this appeal.

-

discovery and seizure of the .380 ammunition, as well as the crack pipe, were lawful under the "plain view exception" to the search warrant requirement.[4]  While we disagree with the Commonwealth's primary argument, we agree with the Commonwealth's alternative argument.  In reviewing a trial court's ruling on a motion to suppress, "[t]his Court is 'bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'"  Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002) (quoting Neal v. Commonwealth, 27 Va. App. 233, 237, 498 S.E.2d 422, 424 (1998)).  However, we are bound to review de novo the ultimate questions of reasonable suspicion and probable cause.  See Ornelas v. United States, 517 U.S. 690, 699 (1996).  Furthermore, the burden is upon the Commonwealth here to show, considering the evidence in a light most favorable to Marek, and granting to him all inferences fairly deducible therefrom, that the court's judgment constituted reversible error.  Reynolds v. Commonwealth, 9 Va. App. 430, 436, 388 S.E.2d 659, 664 (1990).

---

[4] The Commonwealth also contends that, pursuant to Maryland v. Buie, 494 U.S. 325, 333 (1990), the officers could have lawfully conducted a "protective sweep" of the premises and that the crack pipe would have been properly discovered within plain view under such circumstances.  However, the Commonwealth conceded during oral argument that this argument was not raised below.  Accordingly, we do not address the argument as it was not properly preserved for purposes of this appeal.  See Rule 5A:18.

-

We have long recognized that, pursuant to the Fourth Amendment, "[t]he permissible scope of a search is limited by the terms of the warrant pursuant to which it is conducted." Kearney v. Commonwealth, 4 Va. App. 202, 204, 355 S.E.2d 897, 898 (1987) (citing Walter v. United States, 447 U.S. 649, 656 (1980) (explaining that "because 'indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment,' Payton v. New York, 445 U.S. 573, 583 [(1980)], that Amendment requires that the scope of every authorized search be particularly described")).

In the case at bar, it is undisputed that the first search warrant obtained by Officer Perry authorized only a search for "a .380 caliber handgun." (Emphasis added.) The warrant authorized nothing further. We find it significant that the plain terms of the warrant here limited the search to "a" gun. The word "a" is typically used as a "function word before most singular nouns," and generally suggests a "limitation in number." Webster's Third New International Dictionary 1 (1993). While the evidence here may have supported a more broadly worded warrant, such as one covering additional items related to the offense at issue (like other .380 caliber weapons and ammunition) the issuing magistrate and the officers obtaining the warrant elected instead, to phrase the warrant narrowly, limiting the authorized search to only "a .380 caliber handgun."

-

Thus, once Officer Perry retrieved "a .380 caliber handgun," his search yielded the exact object of his investigation, and more importantly, the exact object for which he was authorized to search. Accordingly, the trial court properly determined that, at that time, Officer Perry's authority to search pursuant to the warrant ceased. Indeed, any further search based upon the first warrant would have been unreasonable and unconstitutional as outside the scope of the warrant, unless such additional search was supported by a recognized exception to the warrant requirement. See Horton v. California, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.").

As the Commonwealth argues, the "plain view doctrine" is such an exception to the general rule that warrantless searches and seizures are presumptively unreasonable. Harris v. Commonwealth, 241 Va. 146, 152-53, 400 S.E.2d 191, 195 (1991).

> The Supreme Court, in [Horton], stated the predicates which must be established if the government seeks to avail itself of the plain view exception to the Fourth Amendment:
>
> "It is . . . an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied

-

to justify the warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be 'immediately apparent.' Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself."

Id. at 2308 (citations and footnote omitted); see also Blair v. Commonwealth, 225 Va. 483, 489, 303 S.E.2d 881, 886 (1983). Additionally, the police must have probable cause to believe that the item in question is evidence of a crime or is contraband. Arizona v. Hicks, 480 U.S. 321, 326 (1987); see also Delong v. Commonwealth, 234 Va. 357, 365, 362 S.E.2d 669, 673 (1987), cert. denied, 485 U.S. 929 (1988) (citing Hicks).

Id. "The plain view doctrine may not therefore be used only as a pretext 'to extend a general exploratory search from one object to another until something incriminating at last emerges.'" Cantrell v. Commonwealth, 7 Va. App. 269, 283, 373 S.E.2d 328, 334 (1988) (quoting Coolidge [v. New Hampshire], 403 U.S. [443,] 466 [(1971))]. Indeed, "[g]eneral warrants are proscribed by both the Fourth Amendment, Andresen v. Maryland, 427 U.S. 463, 480 (1976), and Code § 19.2-54.[5] "The purpose of

---

[5] Code § 19.2-54 provides as follows, in relevant part:

No search warrant shall be issued until there is filed with the officer authorized to issue the same an affidavit of some person reasonably describing the place, thing, or person to be searched, the things or persons to be searched for thereunder, alleging briefly material facts, constituting the probable cause for the issuance of such warrant and alleging

-

this proscription is to limit the discretion that police officers may exercise when executing a search warrant and to preclude them from engaging in a 'fishing expedition' or an 'exploratory rummaging in a person's belongings.'" Morke v. Commonwealth, 14 Va. App. 496, 500, 419 S.E.2d 410, 413 (1992) (quoting Coolidge, 403 U.S. at 467).

Thus, the issue to be determined in this context is whether the trial court properly found that Officer Perry's discovery of the crack pipe and prescription drugs, and subsequent seizure of the crack pipe, fell outside the purview of the plain view exception to the warrant requirement. We find no fault with the trial court's determination that the crack pipe "would qualify as contraband." Nevertheless, as the trial court recognized, the plain view analysis requires an initial determination that Officer Perry was in a "lawful position" to view the crack pipe when he first observed it. Cantrell, 7 Va. App. at 282 n.1, 373 S.E.2d at 334 n.1 (noting that in Texas v. Brown, 460 U.S. 730 (1983) (plurality), then Justice Rehnquist stated that "'[p]lain

_____

substantially the offense in relation to which such search is to be made and that the object, thing, or person searched for constitutes evidence of the commission of such offense. . . . No such warrant shall be issued on an affidavit omitting such essentials, and no general warrant for the search of a house, place, compartment, vehicle or baggage shall be issued. The term "affidavit" as used in this section, means statements made under oath or affirmation and preserved verbatim.

-

view' is perhaps better understood . . . not as an independent 'exception' to the Warrant Clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be").  We find that he was.

In reaching this determination, we note that Marek concedes that when Officer Perry and his partner seized the gun, they were in a lawful position to view other items which, if they constituted either contraband or evidence of a crime, fell within the purview of the plain view exception.  We also note that the parties do not dispute the trial court's finding that the box of ammunition was within the officers' plain view from their vantage point in obtaining the gun.

Thus, the only remaining issue is a determination of whether there existed probable cause that the box of .380 ammunition was contraband or evidence of criminal activity.  Given the totality of the information available to the officers and the information they supplied in the affidavit for the search warrant, we hold that probable cause existed as a matter of law that the box of ammunition was evidence of the crime being investigated– firing a gun within the city limits – and therefore the box of ammunition was properly discovered and seized pursuant to the plain view exception to the warrant requirement.  Indeed, we have recognized that:

-

> [P]robable cause is a flexible, common sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, non-technical" probability that incriminating evidence is involved is all that is required . . . .
>
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

Ruffin v. Commonwealth, 13 Va. App. 206, 209-10, 409 S.E.2d 177, 179 (1991) (quoting Brown, 460 U.S. at 742). Here, the ammunition box was "not a facially innocent vessel" as it clearly purported to contain evidence which was directly related to the specific crime the officers were investigating. Id. at 211, 409 S.E.2d at 180. Accordingly, the circumstances surrounding the discovery of the box, the nature of the search warrant, and the items found at the scene indicating that a .380 caliber handgun had been fired, gave Officer Perry probable cause to believe that the box was evidence of a crime, and authorized its seizure.

-

Because we find that Officer Perry and his partner lawfully discovered and seized the box of ammunition, as stated above, we thus find that Officer Perry was in a lawful position from that location to view the crack pipe and the bottles of prescription drugs. Therefore, he likewise lawfully seized the crack pipe, upon which the second search warrant was based.

For these reasons, we reverse the decision of the trial court suppressing evidence obtained beyond the scope of the first search warrant, as we find the items were properly seized pursuant to the plain view exception to the Fourth Amendment search warrant requirement.

<u>Reversed.</u>