# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, O'Brien and Fulton
Argued at Norfolk, Virginia


KURT DANIEL CROWELL

　　　　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION[*] BY
v.        Record No. 0671-23-1　　　　　　　　JUDGE GLEN A. HUFF
　　　　　　　　　　　　　　　　　　　　　　　JUNE 4, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Holly B. Smith, Judge

Charles E. Haden for appellant.

Rachel A. Glines, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Kurt Daniel Crowell ("appellant") appeals his convictions for possession of a firearm by a

convicted felon and contributing to the delinquency of a minor. He argues that the Circuit Court for

the City of Williamsburg and County of James City (the "trial court") erred in denying his motion to

suppress because the search warrant leading to the seized firearm was impermissibly broad and law

enforcement exceeded its scope. Finding no error in the trial court's ruling on the suppression

motion, this Court affirms appellant's convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

In 2021, appellant lived in the same James City County neighborhood as R.L., a 14-year-old girl.[2] Appellant was 46 years old at that time. On several occasions, R.L. ran away from her home to appellant's residence. When James City County Police ("the police") responded to one of those occasions on July 12, 2021, the police advised appellant that R.L. did not have her mother's permission to visit him and that he should call the police if she ever arrived at his home again in the future.

On August 1, 2021, R.L.'s mother gave R.L. permission to go to a friend's home in Newport News. R.L. then used the friend's phone to contact appellant and arranged for him to pick her up from the friend's house. R.L.'s friend later texted appellant to ask if R.L. was still with him; she received differing replies ranging from "I killed her," and "She's in the trunk," to "I'm fine lmao." R.L.'s friend then contacted R.L.'s mother and sent her screenshots of the text messages from appellant. R.L.'s parents called the police, showed them the messages R.L.'s friend received from appellant on her cell phone, and provided the phone number appellant had used when sending those messages.

When the police arrived at appellant's home, he denied that R.L. was inside and he refused to answer any other questions or allow the police to search his home. Shortly thereafter, R.L.'s friend received a text message from appellant's phone number, asking "Did you call my mom?"

_____

[1] On appeal, this Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] This Court refers to the minor involved here by her initials in an attempt to protect her privacy.

While waiting outside appellant's house for a search warrant, the police allowed appellant to leave the house and go into the shed by himself. Eventually, Investigator Renner arrived with a warrant to search appellant's house and detached shed for "[e]lectronic communication device" used to exchange messages with both R.L. and her friend via the friend's cell phone.

After being given a copy of the search warrant, appellant told police there were "no texts on [his] phone." During their search of appellant's house, the police found R.L. in a bedroom. She was fully clothed and appeared to have been recently sleeping on appellant's bed. A cell phone, sex toys, a swing, lubricant, and a bottle of wine were in that same room.[3] While the police were in the bedroom with R.L., a phone rang in another part of the home. R.L. stated that she recognized it as appellant's phone based on the ringtone, but she did not specify a phone number. Officers found three more cell phones in the living room along with a computer and a laptop.

While searching for any other communication devices in the shed, officers saw a rifle and clear Ziploc bag of marijuana in plain view. They immediately stopped the search and obtained a second search warrant for firearms, narcotics, and related paraphernalia. In connection with that warrant, the police discovered and seized from the shed "a semiautomatic firearm, a .357 Magnum revolver, a semiautomatic shotgun, additional marijuana, and a pill bottle containing suspected narcotics in a plastic bag."[4] The police then arrested appellant and advised him of his *Miranda*

---

[3] R.L. denied any physical relationship or physical contact with appellant, maintaining that they were just close friends.

[4] After subsequent analysis, the Department of Forensic Science determined that the suspected narcotics were methamphetamine, a Schedule II controlled substance.

rights.[5] After agreeing to answer the police's questions, appellant admitted to knowing that the firearms were on his property but denied knowledge of the narcotics.[6]

Appellant was indicted under Code §§ 18.2-308.2 and -371, respectively, for felony possession of a firearm after having been previously convicted of a violent felony and misdemeanor contributing to the delinquency of a minor.[7] He filed a motion to suppress all evidence obtained by the police during their "unlawful" search of his house and shed on August 1, 2021. He specifically argued that the first search warrant—which ultimately led to the discovery and subsequent seizure of the firearms in the shed—was impermissibly broad and that the police exceeded its scope by searching the shed after locating both R.L. and several cell phones in the house. According to appellant, those alleged flaws rendered the search unconstitutional and the evidence seized during it subject to suppression. The court held a hearing on the motion at which appellant, Investigator Renner, and Investigator Ernst testified.

To obtain the warrant, Investigator Renner submitted an affidavit that described the "things or persons to be searched" as R.L. and "[e]lectronic communication device believed to be in use by" appellant. Both he and Investigator Ernst testified to their intent for the search warrant to include multiple electronic communication devices. And although Investigator Renner inadvertently wrote "device" rather than the intended "devices" in the affidavit, he and Investigator Ernst genuinely believed the search warrant authorized a search for multiple devices.

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] Appellant alleged that he had received some of the firearms from an unnamed friend. In a subsequent phone call to his brother from the Virginia Peninsula Regional Jail, appellant "admitted to the knowledge of some of the contents of the desk drawer [in the shed], but did not specifically admit to the methamphetamine being there."

[7] He was also indicted with possession of drugs and possession of a firearm while in possession of drugs under Code §§ 18.2-250 and -308.4; these were nolle prossed by the Commonwealth as part of a plea agreement and are not at issue in the appeal.

Both investigators further testified that a single phone number is not necessarily exclusive to a particular device, meaning that even though the text messages to R.L. originated from one phone number, more than one device could have been using that single number simultaneously.[8] Additionally, a user can delete messages on any particular device or remove SIM cards in order to obfuscate from which device or devices the messages were sent. Moreover, to protect a phone's integrity and prevent manipulation of its data, police officers do not manipulate cell phones during a search and seizure; therefore, the police cannot determine the cell phone number assigned to a particular device "just by looking at it." Based on all these factors, Investigators Renner and Ernst reasonably believed that the search warrant authorized the search for and seizure of any and all electronic communication devices in appellant's house and shed that appellant could have used to communicate with R.L. using the designated number.

At the end of the hearing, the circuit court denied appellant's motion.[9] It first found that the signed affidavit sufficiently established probable cause for the magistrate to issue the search warrant. The circuit court then acknowledged that "even if the warrant is not supported by probable cause, the evidence seized in good faith or reliance on that warrant is not subject to suppression." Under that part of its analysis, the circuit court found that the police executed the search warrant reasonably.[10] The court analogized the seizing of multiple phones with a warrant

---

[8] Investigator Ernst acknowledged during the hearing that this was only one of the reasons he directed Investigator Renner "to obtain a search warrant not just for a cellphone but [rather] for electronic devices."

[9] The record reflects that Judge Designate Michael E. McGinty ruled upon appellant's motion to suppress the evidence.

[10] In "deciding if the officers acted in good faith," the circuit court expressly refused to consider "subjective abuse" and instead looked only to "whether the executing officer acted objectively and reasonabl[y] under the totality" of the circumstances. In doing so, the circuit court noted that "the purpose of the exclusionary rule is to deter police misconduct rather than punish the errors of judges and magistrates." Accordingly, "[t]he deterrent is absent when . . . an

for "device" to the hypothetical seizure of multiple handguns while relying on a search warrant authorizing the seizure of a "handgun." Because the officers would need further analysis to determine which phone was involved in the text message exchange, officers were justified in seizing all the items that fit the description.

The circuit court also noted that appellant immediately told officers that the phone taken from his person did not have text messages, so it would have been unreasonable for officers to ignore his other devices that could contain those messages. The court further stated that the police "have no idea [whether] the cellphone that the defendant pulled out of his pocket is, in fact, associated with [a specific] number" and that many devices can simultaneously use the same phone number. Finding that the search warrant specifically indicated what areas could be searched, including the shed, the circuit court held that it was not overbroad and that the police did not exceed the scope of that warrant's authority. Accordingly, the circuit court concluded that even "if the magistrate did not issue that search warrant properly, the police clearly were acting in good faith and the good faith exceptions" applied to the evidence seized thereunder.

Following the circuit court's ruling on his suppression motion, appellant entered a conditional guilty plea to the misdemeanor delinquency charge and to an amended charge of possessing a firearm as a convicted felon.[11] The conditional plea permitted appellant to appeal the circuit court's ruling on the motion to suppress. By an order entered on April 24, 2023, the circuit court accepted the plea agreement, convicted appellant of the offenses, and sentenced him

---

officer acting in an objective good faith obtains a search warrant from the magistrate and acts within the scope of the warrant."

[11] Appellant does not challenge the evidence establishing his prior felony convictions from Michigan: (i) breaking and entering in 1994; (ii) possession of contraband by a prisoner in 1998; and (iii) assault on a law enforcement officer in 2003.

collectively to 5 years and 12 months incarceration with 2 years and 8 months suspended. This appeal followed.

ANALYSIS

Appellant concedes that there was probable cause supporting the search warrant and authorization to seize R.L. and the cell phone on appellant's person. He asserts, however, that the language "[e]lectronic communication device believed to be in use by" appellant was unconstitutionally overbroad and lacked particularity. He also argues that even if the warrant was not overbroad, that police exceeded its scope by seizing multiple cell phones rather than one single "device" and by searching the shed after already locating appellant's cell phone and R.L.

"The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "An appellant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact on appeal." *Taylor v. Commonwealth*, 66 Va. App. 619, 631 (2016). We are "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence," but we review "the trial court's application of the law de novo." *Malbrough v. Commonwealth*, 275 Va. 163, 168-69 (2008). This deferential review of the facts requires us "to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 169 (quoting *Reittinger v. Commonwealth*, 260 Va. 232, 236 (2000)).

"The Fourth Amendment proscribes general warrants." *Harvey v. Commonwealth*, 76 Va. App. 436, 463 (2023); *see also* Code § 19.2-54 (prohibiting general warrants). "The requirements of the Virginia statutes controlling the issuance of search warrants have been interpreted to impose the same search warrant requirements as the fourth amendment." *Morke v. Commonwealth*, 14 Va. App. 496, 500 (1992) (citing *Kirby v. Commonwealth*, 209 Va. 806, 808

(1969)).  When a Virginia magistrate issues a search warrant, any attached affidavit becomes part of that warrant.  Code § 19.2-56.  The warrant must describe "'the place to be searched' and 'the persons or things to be seized.'"  *Harvey*, 76 Va. App. at 463 (quoting *United States v. Cobb*, 970 F.3d 319, 327 (4th Cir. 2020).  "The 'degree of specificity required' depends on the circumstances and type of evidence sought in each case, and 'a practical margin of flexibility [is] permitted.'"  *Id.* (alteration in original) (quoting *Morke*, 14 Va. App. at 500).  So long as law enforcement can differentiate between what items may and may not be seized, the particularity requirement is satisfied, even if the crime being investigated is not listed on the warrant.  *Id.* (citing *United States v. Blakeney*, 949 F.3d 851, 862 (4th Cir. 2020)).

This Court finds that the warrant was sufficiently particular and did not violate the Fourth Amendment.  When read in conjunction with the affidavit, the search warrant authorized seizure of not every electronic communication device in appellant's possession, but specifically the type of electronic communication device capable of sending messages using a specific cell phone number.  The items appellant possessed that were capable of doing so were the five phones, two laptops, a tablet, and computer seized during the search.

Appellant argues that once a single cell phone was seized from his person, police were not permitted to search for or seize additional electronic communication devices because the warrant used the word "device" rather than "devices."  This Court points out that the warrant did not specify "an" or "one" electronic device.  Rather it authorized the police to search appellant's property "for the following property, *objects* and/or persons: . . . [R.L. and] Electronic communication device *believed to be used* by" appellant.  Every device capable of sending

messages using the specific number provided in the affidavit fit that criteria and was eligible for seizure as within the scope of the warrant.[12]

Understandably, the officers did not manipulate the devices on scene to determine which contained the messages, as doing so could compromise the recovery of evidence. In addition, as the warrant only authorized seizure of the devices, the officers would have exceeded the scope of the warrant by searching the data within the devices for the messages.

Nor did law enforcement exceed the scope of the warrant by searching the shed. The search warrant specifically authorized that search. As already established, police were authorized to seize each electronic communication device capable of sending messages using a specific phone number. Appellant's and R.L.'s statements to police during the search established that appellant had access to multiple electronic communications, any of which may or may not have contained messages between appellant and R.L. Thus, police reasonably operated within the bounds of the warrant by searching each authorized place, including the shed, for electronic communication devices subject to seizure.

Although appellant argues that the officers used the search warrant as a pretext for a general search, when the officers saw the firearms in plain view, they ceased the search, held the scene secure, and only acted further upon receiving an additional search warrant authorizing them to seize the guns. The record thus supports the trial court's finding that the officers did not engage in a pretextual search, and the trial court did not err in denying the motion to suppress.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*

---

[12] The trial court reached this conclusion and suppressed SIM cards also seized by law enforcement during the search, finding that storage devices did not fit the warrant criteria.