COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge O'Brien and Senior Judge Haley
Argued at Richmond, Virginia

**PUBLISHED**

JUSTIN ANDREW HARVEY

OPINION BY
v.      Record No. 0723-21-2      CHIEF JUDGE MARLA GRAFF DECKER
JANUARY 24, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Kelsey Bulger, Senior Assistant Public Defender (Virginia Indigent
Defense Commission, on briefs), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Justin Andrew Harvey appeals his convictions for two counts each of statutory burglary,

unlawful filming, and aggravated sexual battery, as well as single counts of malicious wounding

and rape, in violation of Code §§ 18.2-51, -61, -67.3, -90, and -386.1. He challenges the trial

court's refusal to exclude a juror for cause, the denial of his mistrial motion, and four different

evidentiary rulings. For the following reasons, we hold that the trial court did not commit

reversible error, and we affirm the appellant's convictions.

BACKGROUND[1]

The appellant was convicted of crimes committed against three young women—E.A.,

H.H., and K.J.—in the area of Virginia Commonwealth University (VCU) in Richmond during

two separate incidents in May 2018.

_____

[1] Under "familiar principles of appellate review," we state the facts "in the light most
favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73
Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

## I.  Crimes Against E.A. and H.H.

On the evening of May 4, twenty-one-year-old female students E.A. and H.H. attended a party.  H.H. became drunk, and E.A. helped H.H. return to E.A.'s apartment at about 1:00 a.m. on May 5, where H.H. spent the night.  H.H. "passed out" on E.A.'s bed, and E.A. slept on the floor.  When the two awoke in the morning, they realized that their clothing had been cut.  E.A. noticed a pair of scissors were missing from her bedroom.  She then called the police.  Police later found the scissors on a windowsill outside her apartment.

H.H. testified at trial that while she was in a "sleepy haze" and "barely aware of [her] surroundings" that night, someone used scissors to cut off her clothing.  She was also aware of someone touching her lower back and vagina.  She was "still very drunk" and did not open her eyes during the assault.  When she woke up in the morning, she was sober enough to realize the significance of the fact that all of her clothing had been cut off, and she told E.A. about it.  E.A. then realized that her shorts had been partially cut in the buttocks area.

## II.  Crimes Against K.J.

On the evening of May 5, K.J. had drinks with her coworkers and returned to her apartment at about 3:15 a.m. the next morning.  Soon after entering, K.J. realized her front door was open, and then someone knocked her unconscious.  She later awoke on her bedroom floor.  Although fully dressed when she was knocked out, K.J. was naked when she woke up.  She sought help from a neighbor, reported the attack to police, and went to the hospital.  K.J. had injuries to her face, including significant swelling and a fractured orbital bone.  In addition to treating K.J.'s injuries, hospital staff collected samples for a physical evidence recovery kit.

## III.  Investigation of the Crimes and the Two Trials

Police developed the appellant as a suspect in two skirt-lifting incidents not directly related to the offenses against E.A., H.H., and K.J.  In September 2018, in the course of the

investigation of those incidents, the appellant turned over his cellular telephone to the VCU Police. A VCU detective obtained a search warrant for the phone and delivered that phone to Sergeant Bryan Hixson of the City of Richmond Police Department for forensic investigation. Sergeant Hixon examined the appellant's cell phone and extracted data from it for a limited period of time in proximity to the skirt-lifting incidents.

Subsequently, Richmond detectives obtained a warrant to search the appellant's phone for additional dates, including the dates of the offenses against E.A., H.H., and K.J. That warrant led to the discovery of two videos showing a single perpetrator, the appellant, standing over E.A. and raping H.H. in E.A.'s bedroom on May 5, 2018. Hixson also extracted a third video, which K.J. identified as depicting a portion of the May 6, 2018 attack on her in her apartment. The only part of the filmer appearing in that video is a hand.

Forensic testing established that DNA found on E.A.'s scissors and the exterior back doorknob to her apartment after the May 5, 2018 attack belonged to the appellant. No DNA evidence linked the appellant to the May 6, 2018 attack on K.J., and she initially stated that she did not see her assailant. However, K.J. testified at trial that after the appellant was arrested for other offenses, she saw a photograph of him that triggered her memory. She explained that in response to the photo, she recalled seeing the appellant standing over her at two discrete times during the attack.

At the close of the separate trials for the two sets of crimes, the appellant was convicted of the charged offenses.[2] With regard to the crimes against E.A. and H.H., the appellant was convicted of statutory burglary, aggravated sexual battery of E.A., and unlawful filming and rape of H.H. He was sentenced to a total of 75 years for the felonies and 12 months for the misdemeanor filming offense. With regard to the crimes against K.J., the appellant was

---

[2] The appellant was sentenced for both sets of offenses in a single joint proceeding.

- 3 -

convicted of burglary, unlawful filming, malicious wounding, and aggravated sexual battery. He was sentenced to a total of 50 years for the felonies and 12 months for the misdemeanor filming offense. His sentences totaled 125 years for the felonies and 24 months for the misdemeanors.

ANALYSIS

The appellant challenges his convictions on six grounds. He argues that the trial court: (1) erred by refusing to strike a juror for cause; (2) erroneously overruled his objection and denied his mistrial motion related to the Commonwealth's closing argument; (3) improperly denied his motion to suppress evidence; (4) erroneously admitted evidence of a jail telephone call; (5) incorrectly admitted evidence of other crimes; and (6) improperly excluded an unredacted DNA certificate and related testimony and argument.

I. Motion to Strike Juror

We turn first to the appellant's argument that the trial court erroneously refused to strike Juror 19 for cause in his trial for the offenses against E.A. and H.H. He contends that the voir dire showed Juror 19 was not indifferent to the cause and was not rehabilitated and, consequently, should have been struck for cause.

During voir dire, the prosecutor asked the jurors whether they would be able to watch a video showing the rape of the unconscious victim. Juror 19 said that she had a friend who was raped while unconscious. Following additional questioning, defense counsel objected to the seating of Juror 19. The trial court denied the motion to strike her for cause.

"[A] trial court's denial of a motion to strike a juror for cause 'will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.'" *Townsend v. Commonwealth*, 270 Va. 325, 329-30 (2005) (quoting *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001)). An underlying question of juror impartiality is one of fact, and the trial court's determination on the subject is "'entitled to great deference on appeal'" unless "plainly wrong or

unsupported by the record." *Huguely v. Commonwealth*, 63 Va. App. 92, 121, 127 (2014) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). In addressing whether the juror should have been struck for cause, the appellate court must consider the juror's "entire voir dire, not just isolated portions." *Juniper v. Commonwealth*, 271 Va. 362, 401 (2006) (quoting *Jackson v. Commonwealth*, 267 Va. 178, 191 (2004)).

Every defendant has the right to trial by an impartial jury. U.S. Const. amend. VI; Va. Const. art. I, § 8; *see* Code §§ 8.01-357, -358. Exclusion may be required if a juror has "formed any opinion[] or is sensible of any bias or prejudice." *Keepers v. Commonwealth*, 72 Va. App. 17, 42 (2020) (quoting *Lovos-Rivas*, 58 Va. App. at 61). A manifest error in refusing to strike a juror "occurs when the record shows that a prospective juror cannot or will not lay aside his or her preconceived opinion." *Taylor v. Commonwealth*, 67 Va. App. 448, 456 (2017). However, "a trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be str[uck]." *Teleguz v. Commonwealth*, 273 Va. 458, 475 (2007).

Here, the trial court found that Juror 19 could be impartial, and that finding is entitled to deference on appeal unless plainly wrong. *See Huguely*, 63 Va. App. at 127. Additionally, the voir dire as a whole supports the trial court's finding of impartiality. Juror 19 explained that she had a close friend who had been raped. She initially stated that she would "be fine" considering the rape charge fairly "without a video" but that "with a video" and in light of the appellant's defense of consent, she was "not sure [she] could do that fairly." In response to further questioning, Juror 19 responded that she could evaluate evidence in addition to the video but would probably be "sway[ed]" by the video.

Additional voir dire blended several subjects, including the juror's possible bias and her thoughts about the persuasive value of video evidence. The juror also volunteered what she

knew about the law of unconsciousness and consent. The trial court's exchange with her constituted merely clarifying the juror understood that, after receiving the court's instructions on the law of consent, she would be free to consider all of the evidence and would need merely to "be open to consider" the defense. Juror 19 replied that she "would try to" and "th[ought]" she could do so. The court again instructed her that she would have to wait for the evidence and that the voir dire was just to "know" if she "c[ould] apply the law that [the court would] give [her]." After that further explanation by the court, the prosecutor again asked Juror 19 whether she could consider evidence that the alleged victim consented and evidence that she did not consent. Both times the juror responded unequivocally in the affirmative.

Juror 19's combined responses indicate that she did not present a fixed bias based on her experience with her friend. To the contrary, she indicated merely that the existence of a video of the contact *could* be persuasive evidence on the issue of consent. This record supports the trial court's finding that the challenged juror never stated a fixed opinion and indicated that she could be impartial. It was within the province of the trial court, the finder of fact on these issues, to determine what significance to give the juror's statements, including her use of the language, "I think." *See Castillo v. Commonwealth*, 70 Va. App. 394, 423 (2019) (recognizing that the trial court assesses the juror's answers in light of "inflections, tone, and tenor of the dialogue, and the [juror's] general demeanor" (quoting *Smith v. Commonwealth*, 219 Va. 455, 464-65 (1978))).

The appellant suggests that the trial court engaged in overly "aggressive questioning" of the juror while attempting to rehabilitate her and thereby "undermined the confidence in the voir dire examination." We recognize that "when a trial court itself becomes involved in the rehabilitation of a potential juror, we must review the court's decision to retain the person on the panel more carefully." *See Bradbury v. Commonwealth*, 40 Va. App. 176, 181 (2003). "Mere assent to a trial judge's questions . . . is not enough to rehabilitate a prospective juror who has

- 6 -

initially demonstrated a prejudice or partial predisposition." *Keepers*, 72 Va. App. at 46 (quoting *Griffin v. Commonwealth*, 19 Va. App. 619, 625 (1995)). However, the judge may give basic instructions and ask general clarifying questions as "necessary to determine the presence of bias" in the first instance. *McGill v. Commonwealth*, 10 Va. App. 237, 242-43 (1990). Such questioning does not constitute rehabilitation. *Bradbury*, 40 Va. App. at 181; *see Keepers*, 72 Va. App. at 46. "If a trial judge adheres to this role, an appellate court may not set aside the trial judge's determination of a juror's impartiality if the juror's responses, even though conflicting, support that determination." *McGill*, 10 Va. App. at 243.

The record here supports the conclusion that the trial judge, while "remain[ing] relatively detached," was able to assess whether Juror 19 was impermissibly biased or would be able to apply the law in the instructions after the presentation of all the evidence. *See id.* To the extent the juror gave responses that were unclear, the judge clarified them and confirmed that the juror could sit impartially. Although the court asked a series of questions regarding the law, the prosecutor asked the final questions. When the juror was asked if she could consider evidence from both the prosecution and the defense on the issue of consent, she responded, "Yes," and "Absolutely." In the end, the record supports the conclusion that the juror did not demonstrate a fixed bias and that the trial court's questioning and instruction constituted appropriate clarification, not improper rehabilitation.

Accordingly, the court's denial of the appellant's motion to strike the juror was not error.

II. Objection and Mistrial Motion in Response to Prosecutor's Rebuttal Argument

The appellant argues that in his trial for the offenses against K.J., the court erroneously overruled his objection to the prosecutor's rebuttal argument and denied his mistrial motion.

In closing argument, defense counsel noted the absence of any evidence of the appellant's DNA in K.J.'s home. She further pointed to a certificate of analysis showing that someone else's

DNA was found on K.J.'s buttocks where video evidence showed the perpetrator had touched K.J. Counsel argued that the person who left the DNA, who was not the appellant, was the person who assaulted K.J. and made the video.

In rebuttal, the prosecutor replied that the jurors could judge for themselves whether the forensic nurse had obtained the DNA sample from the same part of K.J.'s buttock that the perpetrator touched in the video. He then argued about what the DNA certificate said the appellant was "excluded from," pointing out that it was from the DNA profile developed from "the *sperm* fraction of the perianal buttocks sample." (Emphasis added). The prosecutor asserted that this proved only that K.J. "had sex with someone" else, and he noted that "[n]o one ever said [the perpetrator] had sex with her," only that "[h]e tried to."

Defense counsel objected and asked to approach the bench to state the basis for her objection. The trial court overruled the objection and told counsel that she could proffer the basis for it after argument had concluded. After the jury retired to deliberate, defense counsel stated the basis for her objection to the Commonwealth's rebuttal argument in detail,[3] but she did not request a mistrial or a cautionary instruction. Following a recess, she asked the court to declare a mistrial on the same basis on which she had objected. The court denied the objection and mistrial motion. The appellant challenges those rulings in this Court.

Virginia law makes clear that "errors assigned because of a prosecutor's improper comments . . . during argument will not be considered on appeal unless the accused timely moves for a cautionary instruction or for a mistrial." *Martinez v. Commonwealth*, 241 Va. 557, 559 n.2 (1991); *accord Maxwell v. Commonwealth*, 287 Va. 258, 267-68 (2014). In order to avoid a waiver, a mistrial motion must be made "when the objectionable words were spoken."

---

[3] Defense counsel characterized the prosecutor's argument as falsely representing that the "DNA swab [was] attributable to a consensual partner," and she asserted that an earlier ruling of the court prevented the defense from rebutting that false argument.

*Yeatts v. Commonwealth*, 242 Va. 121, 137 (1991) (quoting *Reid v. Baumgardner*, 217 Va. 769, 774 (1977)). If defense counsel "believes that an argument requires or justifies a mistrial, he has the duty to [make a mistrial motion] promptly *before the conclusion of the argument.*" *Bennett v. Commonwealth*, 29 Va. App. 261, 281 (1999) (emphasis added) (quoting *Pullen v. Nickens*, 226 Va. 342, 347 (1983)). This rule applies even where the defendant makes an objection to the argument that is overruled by the trial court. *Maxwell*, 287 Va. at 268 (citing *Yeatts*, 242 Va. at 136-37).

In short, to preserve an objection to allegedly improper argument made by the prosecution, defense counsel must object contemporaneously, state the basis for the objection, "articulate . . . clearly the action he desire[s] the court to take" (i.e., grant a mistrial or give a cautionary instruction), and point out "that the action need[s] to be taken before the jury retire[s]." *Id.* at 268-69. "There appears to be no exception in Virginia law to the strict application of this rule." *Bennett*, 29 Va. App. at 281; *see Cheng v. Commonwealth*, 240 Va. 26, 38-39 (1990) (objection to rebuttal argument).

Here, defense counsel's only *contemporaneous* action was to object to the prosecutor's argument and ask to state the basis for her objection.[4] She did not request a cautionary instruction, make a motion for mistrial, or indicate that she needed to obtain a ruling on such a motion from the court before the jury retired. Instead, it was only after the jury retired to deliberate, after she stated the basis for her objection for the record, and after the court declared a recess that she asked the court to return to the bench so that she could make a motion for a

---

[4] We assume without deciding that the court prevented defense counsel from stating the *basis* for her objection in a timely fashion by denying her post-objection request to approach the bench. *See generally McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (approving the practice of assuming without deciding to permit deciding a case on the best and narrowest ground). However, this denial did not prevent counsel from making a motion for a cautionary instruction or a mistrial simultaneously with her statement, "I am going to object at this point," and the appellant does not suggest otherwise on appeal.

mistrial on the same grounds on which she objected. As a result, the request for relief came too late. *See Maxwell*, 287 Va. at 267-68.

We hold that the appellant failed to preserve the trial court's denial of his objection because he did not make a timely mistrial motion or ask for a cautionary instruction. Based on this record, the issue is barred.

### III. Motion to Suppress Evidence Obtained with a Search Warrant

The appellant asserts that the trial court erred with regard to both trials by denying his motion to suppress evidence obtained in a search of his cell phone pursuant to a warrant.

The appellant relinquished his cell phone in late September 2018, during an interview with VCU police. The interview pertained to two incidents that had occurred several days earlier, in which an assailant had lifted each victim's dress or skirt. The appellant was arrested following the interview.

On October 1, 2018, a VCU detective obtained a warrant to view photos, videos, and other data on the appellant's phone for a six-day period from the date of the first skirt-lifting incident to the date of the appellant's arrest. In the accompanying affidavit, the detective stated that the appellant admitted he was the assailant in the two skirt-lifting offenses under investigation. VCU police turned the phone and the first search warrant over to Sergeant Hixson, who compiled the data from the phone in the scope of the warrant within the week. The validity of this warrant was never challenged.

On October 11, 2018, a detective from the City of Richmond Police Department obtained a second warrant to search the phone. However, fourteen months later, on December 10, 2019, the appellant made a motion to suppress the evidence found pursuant to that warrant, and in early January 2020, the court granted the motion. Sixteen days later, a different Richmond officer,

Detective Benjamin Neifeld, obtained a third search warrant. The appellant challenged that warrant, and the trial court again granted the motion to suppress.

In July 2020, one day after the trial court suppressed the results of the third search warrant, Detective Neifeld obtained a fourth warrant for the phone, the warrant that is the subject of this appeal. Unlike the second and third warrants, the fourth one included limitations on the time periods for which data was sought, covering one month in 2015 and six months in 2018, two periods during which several crimes had occurred that the appellant was suspected of committing. The affidavit was also much more detailed than the second and third ones because it added information obtained in the search of the S.D. card, an additional storage device in the appellant's phone. Although this data was extracted from the phone's S.D. card pursuant to the first warrant, Richmond detectives did not become aware of it at that time and therefore did not include it in the affidavits supporting the second and third warrants.

The new information obtained from the S.D. card and included in the affidavit submitted as part of the application for the fourth warrant was composed of nine videos created over two days in September 2018, including the appellant's two known skirt-lifting incidents from that period. Regarding a third video, the recording itself was corrupted, but it was created during the narrow 23-minute window in which a woman reported that an assailant broke into her home as she slept and digitally penetrated her vagina. According to the affidavit, a fourth video showed a woman naked from the waist down while changing, as seen from outside her window. Two additional videos showed the filmer in the bedroom of a young woman who was wearing an eye mask and appeared to be asleep. The videos further showed the filmer approach the woman, masturbate, and then ejaculate on her.

The appellant made a motion to suppress the evidence obtained in the execution of the fourth warrant for purposes of both trials. He alleged in part that the warrant was not supported

by probable cause due to insufficient particularity and nexus and that the Commonwealth unconstitutionally extended the seizure of the phone. The trial court rejected the appellant's arguments and denied the motion. The appellant challenges that ruling in this Court.

It is undisputed that a cellular telephone is personal property that is protected by the Fourth Amendment's prohibition against unreasonable searches and that "a warrant is generally required before such a search." *Riley v. California*, 573 U.S. 373, 401-03 (2014). A judicially issued search warrant is entitled to a "presumption of validity," and a defendant challenging a resulting search bears the burden of rebutting that presumption. *Brown v. Commonwealth*, 68 Va. App. 517, 524 (2018) (quoting *Lebedun v. Commonwealth*, 27 Va. App. 697, 711 (1998)).

In reviewing a trial court's ruling on the reasonableness of a search pursuant to a warrant, the appellate court is "bound by the trial court's factual findings unless . . . plainly wrong or unsupported by the evidence." *Hicks v. Commonwealth*, 281 Va. 353, 359 (2011) (quoting *Whitehead v. Commonwealth*, 278 Va. 300, 306 (2009)). At the same time, the appellate court generally reviews the trial court's application of legal principles de novo. *Id.*

This well-established standard of review guides our analysis of the appellant's challenges to the relevant search warrant. He argues that the warrant was not supported by probable cause and that the seizure of evidence was unconstitutional due to the duration of the Commonwealth's retention of custody of his phone.

A. *Probable Cause*

Although an appellate court reviews the application of legal principles such as probable cause de novo, the court must "grant 'great deference' to the magistrate's finding of probable cause" when a search warrant is involved. *Id.* at 360 (quoting *Garza v. Commonwealth*, 228 Va. 559, 563 (1984)); *see Williams v. Commonwealth*, 4 Va. App. 53, 68 (1987).

In examining whether an affidavit supporting a search warrant established probable cause, the reviewing court looks to the totality of the circumstances. *Hicks*, 281 Va. at 359. Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jones v. Commonwealth*, 277 Va. 171, 178 (2009) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)). The appellant suggests that the information in the affidavit did not establish probable cause because it was insufficiently particularized and did not provide an adequate nexus.

### 1. Particularity

The Fourth Amendment proscribes general warrants. *Andresen v. United States*, 427 U.S. 463, 480 (1976); *see Morke v. Commonwealth*, 14 Va. App. 496, 500 (1992) (noting that Code § 19.2-54 also proscribes general warrants). However, it lists only two things that the warrant must describe with specificity: "'the place to be searched' and 'the persons or things to be seized.'" *United States v. Cobb*, 970 F.3d 319, 327 (4th Cir. 2020) (quoting *Grubbs*, 547 U.S. at 97). The test for assessing particularity "is a pragmatic one." *Morke*, 14 Va. App. at 500 (quoting *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979)). The "degree of specificity required" depends on the circumstances and type of evidence sought in each case, and "a practical margin of flexibility [is] permitted." *Id.* (quoting *Torch*, 609 F.2d at 1090). Search warrants "limit[ing] the executing officers' discretion by directing them to seize only evidence of a specific crime consistently have been held to satisfy the particularity requirement." *Id.* at 501 (citing *Andresen*, 427 U.S. at 479-82), *quoted with approval in Moyer v. Commonwealth*, 33 Va. App. 8, 24 (2000) (en banc); *see United States v. Blakeney*, 949 F.3d 851, 862 (4th Cir. 2020) (holding the particularity requirement is met by a description detailed enough to permit the executing officer to determine what may be seized even without reference to a specific crime).

- 13 -

Here, the record supports the trial court's ruling that the challenged search warrant satisfied the constitutional particularity requirement because it lists the specific crimes about which the evidence was sought and the specific places on the appellant's cell phone where the officers were authorized to look for that evidence. *See United States v. Williams*, 592 F.3d 511, 520 (4th Cir. 2010) (upholding a seizure under a warrant authorizing the search of all "computer systems" and "digital storage media" in a defendant's home for evidence of two Virginia crimes, including harassment by computer, in the face of a particularity challenge). *Cf. generally Stickle v. Commonwealth*, 68 Va. App. 321, 337-38 (2017) (holding that using software to search files the defendant shared on a particular network did not violate the constitutional particularity requirement for warrants). The warrant confined the search to the appellant's cell phone, excluding any external storage locations. It also limited the examination of the phone itself to applications that could hold video or photographic data. Finally, the warrant restricted the search to files created between dates that were "book[-]end[ed]" by the crimes of 2015 and those of 2018. With regard to the one-month period in 2015, the police had DNA evidence that tied the appellant to a crime on one of those dates and prevented them from eliminating him as the perpetrator of the other one. Regarding 2018, the police were aware of seven very similar crimes that occurred on various dates within the six-month window that year. The appellant admitted committing at least two of the less-serious crimes that involved skirt-lifting, one of which occurred on the first day of that period and the other of which occurred less than a week from its last day.

On these facts, we hold that the trial court did not err by concluding that the particularity requirement of the Fourth Amendment was satisfied.

## 2. Nexus

The Fourth Amendment "require[s] proof of a constitutionally sufficient nexus between the [item sought] and the place to be searched." *Cunningham v. Commonwealth*, 49 Va. App. 605, 616 (2007). An adequate nexus may be established based on "the nature of the item[s]" sought and "normal inferences" concerning "where one would likely keep such evidence." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988); *see Gregory v. Commonwealth*, 46 Va. App. 683, 690-91 (2005) (permitting the magistrate to draw such inferences).

The appellant argues that evidence of a nexus between his cell phone and the nine crimes of which police suspected him was lacking because "there was evidence in only one" that the assailant used a phone to *record* the potential crime—a 2015 incident in which a woman saw a cell phone that "was possibly recording" "sticking through [her] shower curtain." He concedes that the affidavit also relied on items found on his phone pursuant to the first search warrant, but he suggests that no evidence established that these videos were "criminal in nature."

We conclude that the evidence in the affidavit establishes a nexus between the appellant's phone and the crimes under investigation. The affidavit lists his two prior convictions for nonconsensual filming of an undressed person. Further, it reflects the investigation of the appellant's first 2018 crime covered by the challenged search warrant, during which he pushed down a young woman wearing a dress and attempted to pull off her underwear. That investigation revealed that the appellant appeared to be carrying a cell phone in his hand immediately prior to the March 2018 attack.

The affidavit additionally indicates that data lawfully obtained from the appellant's phone established that he recorded at least five other crimes of a sexual nature committed on September 21 and 22, 2018. Two of those videos match the skirt-lifting offenses of those dates. A third video was damaged and not viewable, but its creation time matches the narrow period in which

the appellant broke into a woman's residence and penetrated her digitally, as confirmed by the victim and DNA evidence. Two additional videos created during the 30-hour time period show what appear to be previously unknown crimes—a recording of a partially nude woman taken from outside her home, and a video showing an apparent home invasion in which the filmer ejaculates on a sleeping woman.

Therefore, of the nine groups of offenses in the affidavit that were committed in 2015 and 2018 and involved identified victims, video evidence was known or strongly suspected to exist in five of them. In the remaining four incidents, regarding which the police had not received reports of filming, the victims were unconscious or asleep for some or all of the attacks and were understandably unable to indicate whether filming had occurred. This record, including the appellant's two prior convictions for unlawful filming and the two videos lawfully discovered on his phone showing previously unknown offenses, provides more than enough evidence to support the trial court's finding that an adequate nexus existed for probable cause to search the appellant's phone for videos and photographs created during the two listed time frames.[5]

Therefore, the warrant and affidavit established an adequate nexus for the phone search.

### B. *Length of the Seizure*

The appellant suggests that the search of his cell phone was unreasonable under the Fourth Amendment based on the length of time it took the Commonwealth to obtain a valid search warrant.[6]

---

[5] Due to the fact that the warrant was supported by probable cause, this Court does not address whether the good faith exception also supports the denial of the suppression motion. *See, e.g.*, *Sanders v. Commonwealth*, 64 Va. App. 734, 742 n.3 (2015).

[6] This is an issue of first impression insofar as binding precedent is concerned. *See Commonwealth v. Eutsler*, No. 1515-19-3, slip op. at 20, 2020 WL 1042160, at *11 (Va. Ct. App. Mar. 3, 2020) ("It appears that no Virginia appellate court has addressed this issue."); *see also Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012) (recognizing that unpublished opinions are not binding but can be "considered for their persuasive value").

A seizure that is "lawful at its inception can nevertheless violate the Fourth Amendment [if] its manner of execution unreasonably infringes possessory interests protected by" that amendment. *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). The owner of an item lawfully seized by police retains at least some possessory interest in it, and a lack of diligence by authorities that unnecessarily lengthens the time during which that person is denied his possessory interest before a valid warrant is obtained can render the seizure unreasonable. *See United States v. Place*, 462 U.S. 696, 709-10 (1983); *United States v. Pratt*, 915 F.3d 266, 271 (4th Cir. 2019).

Assessing the reasonableness of the duration of the retention of the item seized, in this case the phone, requires balancing "the nature and quality" of the Fourth Amendment intrusion "against the importance of the governmental interests alleged to justify" it. *Place*, 462 U.S. at 703. This is a fact-specific test based on the totality of the circumstances. *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012); *see United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009). Relevant factors include (1) "the significance of the interference with the person's possessory interest"; (2) "the duration of the delay"; (3) the presence or absence of consent to the seizure; and (4) "the government's legitimate interest in holding the property as evidence." *Laist*, 702 F.3d at 613-14; *see United States v. Smith*, 967 F.3d 198, 206 & n.1, 208-09 (2d Cir. 2020) (applying factors resembling those in *Laist* and citing cases from other circuits recognizing similar factors). When balancing these factors, a court should also "take into account whether the police diligently pursue[d] their investigation." *Laist*, 702 F.3d at 614 (alteration in original) (quoting *Place*, 462 U.S. at 709). We address each of these considerations in turn.

First, in assessing the degree of interference with one's possessory interest, the nature of the property at issue is relevant. Computers, cell phones, and the like are "unique possession[s] . . . in which individuals may have a particularly powerful possessory interest," due to the

quantity of both business and personal data typically stored on such devices.  *Id.*; *see Brewer v. Commonwealth*, 71 Va. App. 585, 593 (2020).  However, it is undisputed that the appellant was prohibited from possessing his phone by Code § 18.2-431.1(B) while incarcerated.  And he was incarcerated continuously following his arrest, which took place the same day his phone was seized.  Consequently, the seizure did not deprive the appellant of any *direct* interest in possessing the phone.  *See United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015).  Further, defense counsel received a disk containing all the data on the phone during discovery.  *See Laist*, 702 F.3d at 616.  To the extent the appellant retained the right to have a designee pick up the phone itself, he eventually made a request for its return by means of notarized letters.  Those letters, however, were not delivered until more than 21 months after police took custody of the phone, around the same time that the fourth search warrant (later held valid) was obtained.  Consequently, the degree of interference with his possessory interest before the police obtained a valid warrant related to the charges at issue was minimal.

Second, regarding the duration of the delay, about 650 days or more than 21 months passed from when the phone was seized until the prosecution obtained the fourth warrant.  This delay was without doubt a lengthy one, and that delay must be accounted for in the balancing of the factors.

Third, addressing consent, the evidence in the record, viewed in the light most favorable to the Commonwealth, establishes that the appellant "voluntarily" gave his phone to a VCU detective on September 27, 2018.  The trial court was entitled to reject the appellant's testimony that he did not turn it over willingly, particularly in light of evidence to the contrary.  As noted, the appellant eventually requested the return of the phone, but he did not do so until around the same time that the fourth search warrant was obtained.  As a result, those requests for return are entitled to little weight on the issues of consent to take and retain the phone.

Fourth, we consider the Commonwealth's interest in holding the property. The phone was obtained at the time of the appellant's arrest, on September 27, 2018, and it was searched pursuant to a valid warrant issued on October 1, 2018. The search pursuant to that first warrant yielded not only evidence of several crimes but also videos that were themselves contraband because they violated Code § 18.2-386.1, which proscribes filming a nonconsenting nude or partially clad person. Additionally, by that time, the appellant had been indicted for the separate September 2018 skirt-lifting incidents, and evidence of those offenses was on the phone's S.D. card. Personal property without independent evidentiary value may not be kept indefinitely. *See Pratt*, 915 F.3d at 273 (reasoning that where only a phone's files "had evidentiary value," the files could be "removed or copied" and the phone "returned" after examination pursuant to a warrant). Here, however, the Commonwealth repeatedly sought subsequent warrants to permit it to search the appellant's phone for evidence of specific additional crimes that he was suspected of committing, and it had a strong interest in retaining the property while doing so in as prompt a manner as possible. *See Laist*, 702 F.3d at 616-17.

The final step in the analysis is to weigh the various factors, also taking into account the diligence of the officers. *See id.* at 613-14. Under a totality-of-the-circumstances analysis, the evidence supports the trial court's conclusion that the retention of the appellant's lawfully seized cell phone, although lengthy, did not unreasonably infringe his possessory interests. The appellant had a reduced interest in the phone because he was incarcerated for the duration of the seizure and therefore was prohibited by law from possessing the phone himself. He turned over the phone voluntarily at the time of his arrest, and only four days later, the VCU police obtained a warrant to search it for evidence of a different but related group of crimes. Although the appellant submitted written requests for the return of the phone, he did not do so until after the fourth search warrant (the one challenged in this appeal) was issued, more than 21 months after

- 19 -

law enforcement took custody of the phone.[7] Despite the letters, defense counsel did not file a motion seeking a return of the phone, and the prosecutor provided defense counsel with a disk of all the data on it.

Finally, regarding the diligence of the officers with respect to the May 2018 offenses at issue in this case, they sought an additional search warrant each time the court granted a motion to suppress and did so *no more than sixteen days* after each adverse ruling. *See id.* at 614 (recognizing that for a Fourth Amendment event based only on reasonable suspicion, "a delay as short as 90 minutes may be unreasonable" but that where police seized a defendant's computer with his consent and he did not revoke it until after the police obtained a warrant, "a delay of over three months may be reasonable"). The officers involved therefore acted diligently, if imperfectly, to obtain a valid warrant permitting the search that is the subject of this appeal.[8] *See generally Derr v. Commonwealth*, 242 Va. 413, 421 (1991) (recognizing "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant" (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983))).

The evidence before this Court supports the trial court's ruling that the total period of delay was not unreasonable under the Fourth Amendment.

## C. *Validity of Search Warrant*

The evidence met the particularity and nexus requirements to support the finding of probable cause and established that the duration of the authorities' retention of the phone was not

---

[7] The appellant waited 11 months after issuance to challenge the second search warrant, dated October 11, 2018.

[8] The appellant argues that the Commonwealth could not rely on the second or third warrants because the trial court found the police did not act in good faith in obtaining them. The trial court, by denying the motion to suppress the fourth warrant, ruled that these prior findings were not dispositive under the applicable totality-of-the-circumstances analysis.

unreasonable under the circumstances. Therefore, the record supports the trial court's ruling denying the motion to suppress the evidence seized pursuant to the fourth search warrant.

IV. Jail Call and Alleged Discovery Violation

The appellant suggests that in his trial for the offenses against K.J., the court improperly admitted evidence of a telephone call he made from jail because the prosecution did not produce it in a timely fashion in discovery.

On the second day of trial, the prosecution called a witness to authenticate a recording of a "jail [phone] call[]" from over two years earlier that it planned to introduce into evidence. Defense counsel objected, representing that the defense first learned about the call, as well as the Commonwealth's intent to use it at trial, on the Friday afternoon immediately preceding the Tuesday trial. Counsel further represented that the defense did not receive a recording of the call until Monday, the day before trial. As a result, she asked the court to exclude the recording due to the alleged discovery violation.

Regarding the content of the recorded call, the appellant asks a woman if she heard "that there w[ere] fractured faces involved." He also says, "I don't know how I'm supposed to live with myself after that. I didn't realize there was that much damage done."[9]

Defense counsel argued to the court that due to the late disclosure of the recording, they were unable to fully prepare. Counsel suggested that it was not clear whether the reference to "fractured faces" applied to K.J., the victim of the offense for which the appellant was then on trial, or might instead reference a case involving a different victim. When the court inquired whether defense counsel wished to tell the jury the reference might be to someone else whom the

---

[9] We limit our assessment of admissibility to the portions of the recording that the appellant addresses in this Court. *See* Rule 5A:20(d)-(e); *Bartley v. Commonwealth*, 67 Va. App. 740, 744-46 (2017).

appellant was charged with harming, counsel replied, "No." Defense counsel did not articulate any other way in which the appellant's case was harmed by the late discovery.

The court denied the appellant's motion to exclude the jail call. It held that defense counsel received the recording "a day ahead of time" at the latest and that such timing was not prejudicial because the only thing counsel needed to do was talk to the appellant about the call. The appellant now contends that the trial court erroneously admitted the statements he made in the jail call because he was prejudiced by the call's late disclosure.[10]

On appeal, this Court reviews a claim that the trial court erred in the manner in which it oversaw the parties' discovery pursuant to the Rules of the Supreme Court of Virginia under an abuse of discretion standard. *See Juniper*, 271 Va. at 393-94. An abuse of discretion has occurred only when "reasonable jurists could not differ" in their assessment that an erroneous result was reached. *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

A felony defendant is entitled to his own "written or recorded statements or confessions . . . made . . . to any person other than a law enforcement officer[] that the Commonwealth intends to introduce into evidence against the accused at trial." Rule 3A:11(a)(1), (b)(2)(B); *see* Code § 19.2-265.4. Upon request, the trial court must set a deadline for disclosure, and the rule includes a continuing duty to disclose. Rule 3A:11(f), (h). It further provides that in the event of noncompliance, "the court must order [the noncomplying] party to permit the discovery or inspection of materials not previously disclosed" and it "*may* grant such other relief authorized by Virginia law as [the court] may in its discretion deem appropriate." Rule 3A:11(h) (emphasis

---

[10] The trial court first found that the Commonwealth in fact produced the recording in a timely fashion in discovery. We conclude that the court's alternate ruling that the appellant failed to prove that he was prejudiced by the alleged late disclosure of the call provides the best and narrowest ground for decision. *See McGinnis*, 296 Va. at 501. Consequently, we do not consider the trial court's finding regarding when the recording of the jail call was first produced.

added). Options for relief include "grant[ing] a continuance" or "prohibit[ing] the Commonwealth from introducing evidence not disclosed." Code § 19.2-265.4(B). Whether to grant relief "upon a violation of Rule 3A:11 is within the discretion of the trial court, giving due regard to the right of the accused . . . to investigate and evaluate the evidence in preparation for trial." *Frye v. Commonwealth*, 231 Va. 370, 383 (1986).

On appeal, when a defendant challenges the prosecution's late disclosure of inculpatory evidence under Rule 3A:11 and asks for sanctions, he must prove that the late disclosure prejudiced his case. *Smoot v. Commonwealth*, 37 Va. App. 495, 502 (2002). "To show prejudice, the defendant must demonstrate how timely disclosure would have changed his trial strategy or affected the outcome of the trial." *Id.*

Here, the appellant's allegations of prejudice involve ways in which his trial strategy *might* have differed if he had more time to evaluate the content of the recorded phone call. It is undisputed that defense counsel knew about the recorded call, and the Commonwealth's plan to use it, the Friday before trial was scheduled to begin the following Tuesday. Additionally, the prosecutor emailed a recording of the call to defense counsel on Monday morning. This afforded the appellant's two trial attorneys at least a full business day to evaluate it before trial. If defense counsel viewed this amount of time as inadequate to complete their evaluation or alter their trial strategy, they nonetheless had adequate time to ask for a continuance. However, the appellant's attorneys did not request a continuance or even mention that they had considered doing so. *See Frye*, 231 Va. at 384; *see also Lane v. Commonwealth*, 20 Va. App. 592, 594-95 (1995) (holding under Rule 3A:11 that a defendant who claimed surprise but did not request a recess or continuance "sought only suppression of the truth" and could not show prejudice).

On the facts of this case, the appellant did not establish prejudice, and the trial court therefore did not abuse its discretion by admitting the recording of the phone call. *See Naulty v. Commonwealth*, 2 Va. App. 523, 526, 528-29 (1986).

## V. Admission of Evidence of Other Crimes

The appellant argues that the trial court erroneously admitted prejudicial evidence of other crimes in his trial for the offenses against K.J.

Prior to the appellant's trial for the crimes against K.J., the prosecution sought a ruling permitting it to introduce evidence of the offenses against E.A. and H.H. Both sets of crimes occurred within about half a mile and twenty-four hours of each other in May 2018. Additionally, both are depicted in video recordings that were found on the appellant's cell phone. At least a portion of the perpetrator's hand can be seen in both sets of videos. Part of the perpetrator's face, however, is visible in only one of the videos showing the crimes against H.H.

The appellant objected to the admission of the videos of the offenses against E.A. and H.H., their related testimony, and DNA evidence linking the appellant to those crimes. He contended that the evidence, including the video showing him raping H.H., was highly prejudicial propensity evidence and was not admissible under any exception.

The trial court held that the evidence was admissible to prove identity, intent, and modus operandi. It reasoned that the key connection was the presence of both sets of videos on the appellant's phone. It further ruled that the acts themselves were "idiosyncratic enough" in terms of temporal and geographic proximity, the touching and how it "was done," and the fact that the acts were filmed.

At the appellant's trial for the offenses against K.J., the prosecution introduced testimony from E.A., H.H., and various witnesses who investigated the crimes against them, as well as the video evidence showing the appellant's commission of those crimes. K.J. also testified,

- 24 -

confirming that she was the victim in the video that showed only the perpetrator's hand, and she identified the appellant as her attacker. Defense counsel challenged her identification on cross-examination and in closing argument. Counsel further suggested that the appellant could have downloaded the video depicting the attack on K.J. from social media.

At the close of trial, the court instructed the jurors that they could consider evidence that the appellant committed a crime other than the one for which he was on trial only as evidence of his intent, identity, and "the unique nature of the method of committing the crime charged in connection with the crime for which he [was] on trial and for no other purpose." The appellant contends that the trial court erroneously admitted the videos and related evidence of the crimes against E.A. and H.H. in his trial for the crimes against K.J.

On appeal, a court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Hicks v. Commonwealth*, 71 Va. App. 255, 270 (2019); *see Turner v. Commonwealth*, 259 Va. 645, 651 (2000). This standard "includes review to determine that the discretion was not guided by erroneous legal conclusions." *Hicks*, 71 Va. App. at 270 (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

When a question regarding the admissibility of evidence requires the resolution of an underlying factual issue, the trial court must determine those facts by a preponderance of the evidence. *Id.* at 275 (citing *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001)). Such "subsidiary findings are binding on appeal 'unless "plainly wrong" or without evidence to support them.'" *Id.* (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)); *see Meade v. Commonwealth*, 74 Va. App. 796, 805-06 (2022) (applying standard to a video).

The law is clear that evidence "tend[ing] to show that the accused is guilty of other crimes and offenses at other times" is not admissible if "offered merely to show [the accused's] propensity to commit" the charged crime. *Ortiz v. Commonwealth*, 276 Va. 705, 714-15 (2008);

*see* Va. R. Evid. 2:404(b). "However, numerous exceptions to this rule authorize the admission of [prior] 'bad acts' evidence." *Ortiz*, 276 Va. at 714. Even so, such evidence is admissible only if its "legitimate probative value . . . outweigh[s] its incidental prejudice." *Kenner v. Commonwealth*, 299 Va. 414, 427 (2021) (quoting Va. R. Evid. 2:404(b)). We consider the exceptions and balancing test in turn.

A. *Exceptions Permitting Admissibility*

Virginia "follows an 'inclusionary approach' to the uncharged misconduct doctrine by admitting [other-crimes] evidence 'if relevant[] for any purpose *other than* to show a mere propensity.'" *Castillo*, 70 Va. App. at 415 (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 757 n.8, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). Recognized exceptions to the rule barring propensity evidence permit its admission to prove identity or intent. *See* Va. R. Evid. 2:404(b).

One method of proving identity involves evidence of criminal acts that share a common modus operandi, defined as "a distinctive . . . resembl[ance]" between two crimes that is sufficient to "raise the probability of a common perpetrator." *Spencer v. Commonwealth*, 240 Va. 78, 89 (1990). The other crime need not qualify as a "signature" or "virtual carbon cop[y]" of the offense for which the defendant is on trial to be admitted. *Id.* at 89-90. Instead, it is enough if the other crime "bear[s] 'a singular strong resemblance to the pattern of the offense charged.'" *Id.* at 90 (quoting *United States v. Hudson*, 884 F.2d 1016, 1021 (7th Cir. 1989)).

Here, a strong pattern of evidence links the crimes against K.J. with the crimes against E.A. and H.H. for purposes of admissibility. First and foremost, police found the videos showing portions of both sets of offenses in precisely the same location on the appellant's Samsung phone—the separate "My Files" folder "under the downloads tab." The two sets of videos were accompanied by virtually identical metadata. That metadata reflects their creation

on an iPhone 6 using the same version of operating system software and supported a finding that they were transferred to the Samsung at the same time several months later. Further, the evidence established that the appellant previously owned an iPhone.[11] The record therefore supports a finding by a preponderance of the evidence that the appellant personally took all three May 2018 crime videos with the iPhone 6 and later transferred them to his new Samsung phone.

Additionally, the contents of the videos and the ways in which the two sets of crimes were committed involve distinct similarities. *See Spencer*, 240 Va. at 91. The victims in both sets of crimes were young women with similar builds and skin tones. *Cf. Turner*, 259 Va. at 650, 653 (holding that dissimilarities in skin tone and age were not dispositive). They were assaulted within about twenty-four hours of each other in apartments about half a mile apart. *See id.* at 652 (considering geographical proximity of abductions). In one attack, the perpetrator entered through an unlocked door and likely also did so in the second attack.[12] *See Spencer*, 240 Va. at 88 (considering similar method of entry through windows).

Further, the victims arrived home between about 1:00 a.m. and 3:15 a.m. and were attacked between about 3:00 a.m. and 6:00 a.m. All had been drinking before returning to their apartments, rendering them more appealing targets because they were less likely to wake up

---

[11] The appellant's face is visible in one of the videos of E.A. and H.H., which was taken with an iPhone 6. An unrelated photo on the Samsung shows him in front of a mirror holding what appears to be an iPhone, and that photo was taken with an iPhone 6 using the same version of operating system software, about a month after the crimes at issue. Only one video or photo in evidence was taken with the Samsung. Detective Hixson confirmed that the videos and photos did not appear to have been tampered with and that someone could transfer such files from an old iPhone to the "downloads" folder of a new phone.

[12] E.A. had not checked the door used to access her apartment to see if it was locked, and defense counsel argued that the Commonwealth offered no evidence of forced entry.

during the sexual attacks.[13] *See Turner*, 259 Va. at 652 (considering the time of day the offenses were committed); *Spencer*, 240 Va. at 88 (noting that the victims were all "overcome while asleep"). Each primary victim was clothed before being attacked and was disrobed by her attacker while her ability to resist was impaired. Each video also depicts the primary victim in bed in a room with the lights on.

Finally, each video shows the filmer using his left hand to touch the victim's left buttock and expose her anus and vulva. The trial court found that this hand motion was very similar in both attacks, and the evidence, viewed under the appropriate standard, supports that finding. *See Meade*, 74 Va. App. at 805-06. The size and shape of the hand visible in the attack on K.J. also closely resembles the hand visible in the appellant's assault on H.H. Finally, the fingernails are of the same length and have visible dirt under them in both videos, which were filmed only about 24 hours apart.

This evidence, viewed in its entirety, supports the trial court's ruling regarding the probative value of the other-crimes evidence to prove the disputed element of identity.

Although the appellant suggests that he could simply have downloaded the video of the assault on K.J. from the internet, this argument ignores K.J.'s testimony at trial that she remembered seeing him standing over her twice during the attack in her apartment.[14] And the standard for admissibility of other-crimes evidence requires merely "the probability of a common

---

[13] H.H. was unable to walk home by herself and remembered that "strangers on the street" noticed how drunk she was. K.J. admitted that she had consumed "three mixed drinks and two or three shots" while with her friends, and she had a blood alcohol content of .154 four hours after she returned home.

[14] Although the prosecutor represented prior to trial at the pretrial motion hearing that K.J. "w[ould] not be able to identify" the appellant "as [her] assailant," this Court may consider K.J.'s identification at trial in reviewing the appellant's admissibility challenge. *See Bottoms v. Commonwealth*, 22 Va. App. 378, 383-84 (1996) (noting that a judge has a duty to alter a pretrial ruling on a motion in limine if required by "the case as it actually develops" at trial).

perpetrator," not affirmative proof of one. *See Turner*, 259 Va. at 652. The evidence before the jury permitted it to consider the possibility that he committed the offenses against E.A. and H.H. and simply downloaded the video of the crimes against K.J. from the internet. The likelihood of this scenario was for the jury to determine when it weighed all of the evidence. This possibility did not render the evidence of the crimes against E.A. and H.H. inadmissible to prove identity in part through modus operandi.

The other-crimes evidence was also relevant to prove the appellant's intent at his trial for the offenses against K.J. Both the burglary and aggravated sexual battery charges included the element of intent to commit rape or some other act of sexual abuse. *See* Code §§ 18.2-67.3, -67.10, -90. The prosecution "is required to prove every element of its case" and "is entitled to do so by presenting relevant evidence in support of the offense[s] charged." *Kenner*, 299 Va. at 426. A defendant cannot prevent the prosecution from doing so "simply because [he] takes the position that the offense did not occur [or that someone else committed it] and therefore intent is not genuinely in dispute." *Id.*

Consequently, the other-crimes evidence was relevant to prove identity (both independently and through modus operandi) and intent. This does not, however, end the inquiry. Whether it was admissible for these purposes depends upon a weighing of its probative value against any prejudicial effect.

### B. *Prejudicial Versus Probative Value*

"[W]here a course of criminal conduct . . . consist[s] of a series of related crimes, the perpetrator has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial." *Id.* at 426-27 (quoting *Scott v. Commonwealth*, 228 Va. 519, 526 (1984)). "Virginia law . . . intervenes" in such circumstances "only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate

- 29 -

inferences. And even then, [the issue is] a matter of degree." *Thomas*, 44 Va. App. at 758. Accordingly, relevant evidence is admissible as long as the "legitimate probative value of such proof outweighs its incidental prejudice" to the defendant. *Kenner*, 299 Va. at 427 (quoting Va. R. Evid. 2:404(b)). The responsibility for balancing these considerations rests with the sound discretion of the trial court. *Ortiz*, 276 Va. at 715.

Here, the evidence of the crimes against H.H. and E.A. was highly probative of the identity of K.J.'s attacker. The probative value of this evidence was heightened because defense counsel disputed the sufficiency of the evidence to prove identity. *See Hewston v. Commonwealth*, 18 Va. App. 409, 414 (1994) (observing the "powerful probative value" of other-crimes evidence on the "central issue" of the perpetrator's identity); 5 Ronald J. Bacigal & Corinna Barrett Lain, *Virginia Practice Series: Criminal Procedure* § 17:35, at 639 n.14 (2021-2022 ed.). Defense counsel also attacked K.J.'s claim that she recognized the appellant as the perpetrator shortly after his arrest. Thus, the probative value of the evidence that the appellant was the perpetrator of the offenses against H.H. and E.A. in his trial for the crimes against K.J. was substantial. *See Hewston*, 18 Va. App. at 414. The evidence that the appellant raped H.H. was also probative of his intent in entering K.J.'s apartment and attacking her.

Admission of the video of the appellant having sexual intercourse with H.H. was assuredly prejudicial. However, both the prosecution and the trial court took steps to restrict the prejudicial impact of this other-crimes evidence. The prosecution noted that it sought to offer evidence only of the crimes against E.A. and H.H., despite a number of other similar crimes in which the appellant was implicated. The trial court limited the impact of the other-crimes evidence through a cautionary instruction directing the jury to consider the evidence for the limited purposes of his intent, identity, and modus operandi. *See* Model Jury Instrs.—Crim. No.

2.260. The record contains no evidence that the jurors did not follow that instruction. *See Spencer*, 240 Va. at 95.

The record supports the trial court's ruling that the probative value of the evidence on the *combination* of elements for which it was offered—identity and intent—outweighed the obvious yet incidental prejudice. In light of the record as a whole, we conclude that the trial court did not abuse its discretion by admitting the video and related evidence of the appellant's rape of H.H.

### VI. Redacted DNA Report and Evidence of K.J.'s Consensual Sexual Partners

The appellant contends that in his trial for the offenses against K.J., the court erroneously excluded evidence related to DNA found on her buttocks and that this error was not harmless.

The appellant was charged with aggravated sexual battery of K.J. due to her physical helplessness. The charge was based in part on the video of the attack found on the appellant's phone, which showed a hand twice purposefully touching and moving K.J.'s bare buttock while she was unconscious, exposing her anus and vulva. No allegation was made that the assailant penetrated K.J. or had any sexual contact with her beyond the purposeful touching.

Following K.J.'s attack, a nurse swabbed her vaginal and perianal areas for evidence. K.J. reported that she had one consensual sexual partner in the days before the attack, and Kerri Rosana of the Department of Forensic Science found that person's DNA in the vaginal sample collected. Additionally, that person could not be eliminated as a contributor to the perianal sample. A second person's DNA was also detected in the perianal sample. Both K.J. and the appellant were eliminated as contributors to that sample, which left a nonconsensual contributor whose identity was unknown.

The appellant sought a pretrial ruling permitting him to introduce the certificate of analysis of K.J.'s perianal swab, as well as Rosana's related testimony. He also requested permission to cross-examine K.J. in limited fashion "regarding the number of [her] recent

consensual [sexual] partners." Defense counsel explained her dual goals: to be able to argue not only (1) that the appellant did *not* leave DNA on K.J.'s buttock cheek but also (2) that another person with whom K.J. did not have consensual contact did leave his DNA there, strengthening the argument that someone other than the appellant was the attacker.

The trial court ruled that evidence regarding anything other than exclusion of the appellant as a contributor to the DNA on the perianal swab was inadmissible. It allowed the appellant to present a redacted copy of the certificate of analysis showing only his exclusion. The court further instructed defense counsel and the witness not to "talk about mixtures" or "other unidentified people."

Rosana testified to the jury that she excluded the appellant as the source of the DNA profile found on K.J.'s perianal swab. Defense counsel introduced the redacted certificate of analysis, which showed that the appellant was "eliminated" from the DNA "profile developed from . . . the perianal/buttocks sample." Neither Rosana's nor K.J.'s testimony nor the redacted certificate (nor any combination of the three) permitted the inference that DNA from an unidentified person who was not a consensual contact of K.J.'s was found in that profile.

The appellant contends that the trial court erred by limiting the testimony of K.J. and Rosana and requiring related redactions to the certificate of analysis. He argues that it was crucial to his defense to prove not only that he himself had been eliminated as a possible contributor of the DNA found on K.J.'s buttocks but also that the sample contained the DNA of an unidentified person who was not a consensual sexual partner. He asserts that both categories of evidence were admissible under the constitutional due process principles set out in *Neeley v. Commonwealth*, 17 Va. App. 349 (1993), and were necessary to permit him to argue effectively that the unidentified DNA was present on K.J.'s buttock because someone else committed the crimes against her.

To resolve this case on the best and narrowest ground, we assume without deciding that the trial court erred pursuant to *Neeley* but conclude that any error was harmless.[15]  *See Commonwealth v. White*, 293 Va. 411, 419 (2017).  Constitutional error is harmless if the appellate court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see White*, 293 Va. at 422.  Harmless error analysis "is available not only when the error consists of erroneously admitting evidence" for the Commonwealth "but also when it consists of [erroneously] excluding defense evidence."  *United States v. Cerro*, 775 F.2d 908, 916 (7th Cir. 1985); *see Ray v. Commonwealth*, 55 Va. App. 647, 649-52 (2010).  The test for the two types of error is not "identical," in part because "an asymmetry" exists between allowing the prosecutor "to put in more evidence of guilt than he should have" and the extreme case of preventing the defendant "from putting on a[ny] defense [at all]."  *Cerro*, 775 F.2d at 916.  However, where, as we assume here, a defendant is only partially deprived of the "right to call witnesses on his behalf," the error is harmless if the record establishes "'that a rational jury would have found the defendant guilty absent the error.'" *United States v. Rhynes*, 218 F.3d 310, 323 (4th Cir. 2000) (en banc) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)); *see Ray*, 55 Va. App. at 652.[16]  This test contrasts with the

---

[15] Virginia's rape shield statute and its exceptions "serve[ merely] as a predicate to the constitutional analysis" required to assess the admissibility of evidence of a victim's prior sexual conduct in prosecutions for various sexual offenses.  *Neeley*, 17 Va. App. at 357 (citing Code § 18.2-67.7).  A multipart test determines whether proffered evidence that is not admissible under a statutory exception must nonetheless be admitted under constitutional standards.  *Id.* at 356-58.  We do not address this issue based on our conclusion that any error was harmless.

[16] One federal appellate court has held that if a defendant "were utterly precluded from defending himself, it would be clear that his conviction had to be reversed even if the evidence of guilt was overwhelming."  *Cerro*, 775 F.2d at 916.  Virginia recognizes this distinction between "trial" and "structural" errors.  *Ray*, 55 Va. App. at 651.  Structural errors affect "the very 'framework within which [a] trial proceeds,'" and examples recognized in Virginia include the denial of a public trial and representation by counsel.  *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 140 (2009)).  Structural errors are so fundamental that they can never be harmless.  *Id.*

"sufficiency standard[, which] asks whether a rational [factfinder] *could have* found the defendant guilty." *White*, 293 Va. at 422.

Consequently, in conducting harmless error analysis, the reviewing court must consider "the potential effect of the excluded evidence in light of all the evidence" before the jury. *Haas v. Commonwealth*, 299 Va. 465, 467 (2021) (quoting *Commonwealth v. Proffitt*, 292 Va. 626, 642 (2016)) (non-constitutional error); *see Maynard v. Commonwealth*, 11 Va. App. 437, 448 (1990) (en banc) (assuming that a constitutional error had the maximum damaging effect possible). Ultimately, constitutional error in excluding defense evidence is harmless if "the evidence of guilt was overwhelming and the defendant was allowed to put on a defense, [even] if not quite so complete a defense as he might reasonably have desired." *Cerro*, 775 F.2d at 916.

In applying harmless error analysis here, we assume without deciding three things. We assume that the appellant should have been allowed to introduce the unredacted certificate of analysis and related testimony. We further assume that he was entitled, based on that evidence, to argue that he was excluded as a contributor of the DNA on K.J.'s buttocks. Finally, we assume he was also entitled to argue that DNA found there belonged to someone other than him with whom K.J. did not have consensual sexual activity. Nonetheless, due to the appellant's argument based on the redacted certificate of analysis and the evidence as a whole, we conclude beyond a reasonable doubt that the jury would have found the appellant guilty of the crimes against K.J. even if the evidence at issue had been admitted. *See White*, 293 Va. at 422.

First, despite the exclusion of evidence that DNA on K.J.'s perianal swab came from someone with whom K.J. did not report having consensual sexual activity, defense counsel was able to make the same basic point about DNA based on the evidence in the record, including the redacted certificate of analysis and Rosana's related testimony. *Cf. Smith v. Commonwealth*, 72 Va. App. 523, 545 (2020) (holding that excluding testimony "merely cumulative" of admitted

testimony was harmless error). Defense counsel argued to the jury in closing that Rosana analyzed the swab taken from K.J.'s "buttocks region, . . . the very region that [the jury saw] the hand in the video touching," and developed a DNA profile. Counsel emphasized repeatedly that the DNA found there was not the appellant's and argued that it was left by the perpetrator whose hand was seen in the video. In short, the admitted evidence permitted defense counsel to argue that the appellant was not the perpetrator and that the offense was committed by the unidentified person whose DNA was found on the victim's buttocks. The only thing the appellant was not able to argue was that the evidence affirmatively proved that the DNA found there was from someone who was not a consensual sexual partner of K.J.[17]

Other evidence concerning the properties of DNA transfer weakened defense counsel's argument about the significance of the foreign DNA found on K.J.'s buttocks. Expert testimony indicated, for example, that someone else's DNA could have been transferred to K.J.'s buttocks indirectly, lessening the importance of defense counsel's argument about the foreign DNA found there. Conversely, the record also established a reduced likelihood that the perpetrator's DNA would be there based on the brief, albeit highly intrusive, hand contact seen in the video. The outcome was also dependent upon whether the area touched was actually swabbed during the evidence collection, which the nurse testified was merely "possible" based on her usual practice.

Most important in the harmless error analysis, though, is the additional evidence that directly ties the appellant to the crimes against K.J. This evidence includes K.J.'s identification of the appellant as her assailant, the recording of K.J.'s attack on his phone, his incriminating

---

[17] The fact that the prosecutor argued on rebuttal that the DNA found on K.J.'s buttocks came from a consensual sexual partner does not negate this assessment of harmlessness. *See generally Riverside Hosp., Inc. v. Johnson*, 272 Va. 518, 525 (2006) (recognizing that arguments of counsel are not evidence). As noted in Part II of the Analysis section, *supra*, the appellant waived the right to challenge the prosecutor's argument on this point.

statements in the recorded jail call, and the evidence that he committed similar crimes against E.A. and H.H.

The video of the attack on K.J. shows her as she regains consciousness, cries out, and tells her attacker to stop as sounds of punching can be heard. A subsequent CT scan revealed that the orbital bone beneath her eye was fractured. K.J. did not remember who attacked her immediately following the assault, but she testified that she recognized the appellant when he was arrested several months later, and she identified him as her attacker at trial. A recording of a telephone call that the appellant made from jail corroborated K.J.'s identification. In that call, which the appellant made the day after he was denied bond for the charge of maliciously wounding K.J., he indicated learning that "fractured faces" were "involved." The appellant also stated that he did not "realize there was that much damage done" and did not know how he could "live with [him]self."

Additionally, the evidence of the similar offenses that the appellant committed against E.A. and H.H. further ties the appellant to the crimes committed against K.J. the very next night. DNA connected him to the offenses against E.A. and H.H., and his face was visible in one of the videos. The videos of those crimes were found in the same "downloads" folder on the appellant's Samsung phone as the video of K.J. All the videos were created on an iPhone 6 using the same version of system software, showed no signs of alteration, and appeared to have been downloaded to the Samsung within the same two-minute window. Finally, a photo taken about a month after the crimes against the three women and two months prior to the transfer of all three videos to the Samsung showed the naked appellant in front of a mirror holding a phone consistent in appearance with an iPhone. This evidence establishes that the appellant took *both* sets of videos on the iPhone 6 he owned at the time and later transferred them to his Samsung phone on which they were found.

Other similarities connect the appellant to the crimes against K.J. As noted, the assaults occurred within about 24 hours of each other in apartments about half a mile apart. The victims were young women with similar skin tones and builds who arrived home between about 1:00 a.m. and 3:15 a.m. and were filmed between about 3:00 a.m. and 6:00 a.m. All three victims had been drinking before returning to their apartments, rendering them less likely to wake up during the sexual attacks. Each primary victim was clothed before being assaulted and was disrobed by her attacker while incapacitated and unable to resist. Each video depicts the primary victim in bed in a room with the lights on, while nude and either unconscious or in a deep sleep. Each video also depicts the filmer using his left hand in a distinctive way to move the primary victim's left buttock cheek, exposing her anus and vulva. The size and shape of the hand in the video of the attack on K.J. closely resembles the hand belonging to the appellant that is visible in the assault on H.H., perpetrated the previous day.

The evidence as a whole overwhelmingly proves that the appellant committed the charged offenses against K.J. In light of that evidence and the fact that defense counsel was able to argue both that the appellant was excluded as a contributor of the DNA found on K.J.'s perianal swab and that someone else's DNA was found there, we hold that any error in excluding the evidence of K.J.'s consensual sexual contacts and defense counsel's related arguments regarding the results of the DNA testing was harmless beyond a reasonable doubt. *See United States v. Rand*, 835 F.3d 451, 460, 462 (4th Cir. 2016) (holding that the constitutional error of excluding a small portion of the defendant's testimony about his confession was harmless given "the overwhelming evidence" and his "opportunity to present a vigorous defense" and "explain 'what was in his mind' during his various interviews," "albeit in a slightly limited way").

CONCLUSION

We hold that the trial court did not commit reversible error in any of the ways that the appellant alleges. First, it did not err by refusing to strike Juror 19 for cause. Second, the appellant failed to preserve his challenge to the prosecutor's rebuttal argument. Third, the court did not err by refusing to suppress evidence obtained in a search of the appellant's phone. Fourth, it did not abuse its discretion by declining to exclude the recording of the jail call. Fifth, the court did not abuse its discretion by admitting the videos and related evidence of the appellant's crimes against two other victims. Sixth, assuming the trial court erred by limiting the appellant's evidence regarding DNA found on the victim's buttocks swab and the victim's recent consensual sexual partners, any error was harmless due to the appellant's ability to make virtually the same argument based on the evidence that was admitted and the overwhelming evidence of his guilt in the record. Consequently, we affirm the challenged convictions.

*Affirmed.*